[Cite as *State v. Troutman*, 2013-Ohio-4559.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

RANDELL TROUTMAN

    Appellant

C.A. No.     12CA010223

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    09CR078681

DECISION AND JOURNAL ENTRY

Dated: October 15, 2013

BELFANCE, Judge.

{¶1} Randell Troutman appeals his convictions from the Lorain County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} Police officers, with the assistance of a confidential informant, observed two drug sales conducted by Mr. Troutman on May 6, 2009, and May 14, 2009. On July 14, 2009, the police set up a third drug buy and arrested Mr. Troutman at the scene. A search of Mr. Troutman's vehicle uncovered 500 grams of cocaine wrapped in a blue shopping bag. A search of a trailer Mr. Troutman had been observed frequenting uncovered additional drugs, firearms, and personal papers of Mr. Troutman.

{¶3} Mr. Troutman was indicted on many counts related to the May 6, May 14, and July 14, 2009 incidents. Based upon the controlled buys on May 6 and May 14, 2009, Mr. Troutman was indicted for two counts of trafficking cocaine in a quantity equal to or exceeding

10 grams but less than 100 grams, one count for each day. Mr. Troutman was also indicted for allegedly committing the following offenses on July 14, 2009: (1) trafficking at least 500 grams but less than 1000 grams of cocaine, (2) trafficking at least 100 grams but less than 500 grams of cocaine, (3) possessing at least 100 grams but less than 500 grams of cocaine, (4) trafficking more than 1 gram but less than 5 grams of cocaine, (5) possessing more than 1 gram but less than 5 grams of cocaine, (6) a drug paraphernalia offense, (7) having weapons under disability, and (8) two counts of possessing criminal tools. A supplemental indictment charged Mr. Troutman with trafficking at least 500 grams but less than 1000 grams of cocaine, trafficking 100 or more grams of crack cocaine, possessing at least 500 grams but less than 1000 grams of cocaine, and possessing 100 or more grams of crack cocaine. The State subsequently dismissed counts 2, 3, and 9 of the original indictment, which were trafficking at least 100 but less than 500 grams of cocaine on July 14, 2009, possessing at least 100 but less than 500 grams of cocaine on July 14, 2009, and a possession of criminal tools charge. A jury found Mr. Troutman guilty of the remaining charges, and the trial court sentenced him to an aggregate prison term of 14 years.

{¶4} Mr. Troutman has appealed, raising three assignments of error for our review.

## II.

### ASSIGNMENT OF ERROR I

THE CONVICTIONS ARE AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT [(SIC)] VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶5} Mr. Troutman argues that his convictions are not supported by sufficient evidence because the State failed to produce evidence that, if believed, would allow a jury to conclude that Mr. Troutman possessed over 500 grams of cocaine, 100 grams of crack cocaine, or the firearms

in the trailer. Mr. Troutman confines his arguments to the trafficking and possession charges related to July 14, 2009, as well as the weapons under disability charge, and we limit our analysis accordingly.[1] *See* App.R. 16(A)(7).

{¶6} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶7} A jury found Mr. Troutman guilty of violating of former R.C. 2925.03(A)(1) and R.C. 2925.03(A)(2) by trafficking more than 500 grams of cocaine and of violating R.C. 2925.03(A)(2) by trafficking more than 100 grams of crack cocaine. The jury also found Mr. Troutman guilty of two counts of violating former R.C. 2925.11(A) by possessing 500 grams of cocaine and 100 grams of crack cocaine. Former R.C. 2925.03(A) provides that

> [n]o person shall knowingly do any of the following:
>
> (1) Sell or offer to sell a controlled substance or a controlled substance analog;
>
> (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person.

---

[1] Mr. Troutman does not dispute that the State produced sufficient evidence to support his convictions for possessing criminal tools, possessing drug paraphernalia, trafficking cocaine on May 6, 2009, trafficking cocaine on May 14, 2009, or trafficking and possessing less than five grams of cocaine on July 14, 2009. Accordingly, we do not address those convictions. *See* App.R 16(A)(7).

Pursuant to former R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶8} The jury also found Mr. Troutman guilty of violating former R.C. 2923.13(A)(3), which provides that,

> [u]nless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *.

{¶9} Detective Dennis Camarillo testified that he worked with a confidential informant who had been arrested for drug trafficking and, in exchange for dropping the charges against him, had agreed to help Detective Camarillo arrest other drug traffickers. One of the people the confidential informant believed he could purchase drugs from was Mr. Troutman. The confidential informant first purchased drugs from Mr. Troutman on May 6, 2009. The informant called Mr. Troutman looking for drugs, and Detective Camarillo recorded the phone call. Prior to the confidential informant meeting with Mr. Troutman, Detective Camarillo searched the informant's car to make sure that the informant did not have any drugs on his person. Detective Camarillo then provided the informant with money with which to purchase the drugs, and the informant met with Mr. Troutman. Following that meeting, the informant met with Detective Camarillo and gave him the drugs he had purchased from Mr. Troutman. The confidential informant also purchased drugs from Mr. Troutman on May 14, 2009, under similar circumstances.

{¶10} Detective Camarillo testified that the detectives who had observed the May 6, 2009 drug buy between Mr. Troutman and the informant had obtained Mr. Troutman's license plate number. Using the license plate number, the detectives discovered the address that Mr. Troutman had listed as the registration location for the car. However, despite watching the house, the officers never saw Mr. Troutman or his vehicles there. Detective Camarillo received other information that led him to believe that Mr. Troutman actually lived in a trailer park in Amherst. Detective Camarillo went with Detective Colon to investigate and observed Mr. Troutman's car at the trailer park. Having found where he believed Mr. Troutman was living, Detective Camarillo contacted the confidential informant again and asked him to arrange one more buy. On July 10, 2009, Detective Camarillo recorded a phone conversation between Mr. Troutman and the informant as well as subsequent conversations that day.

{¶11} On July 14, 2009, Detective Camarillo went to the trailer home and observed a vehicle registered to Mr. Troutman in the driveway. He then obtained an anticipatory search warrant to search the trailer. Later that day, Detective Camarillo's confidential informant called Mr. Troutman, and Mr. Troutman told him to meet him at the carwash on Kresge Drive in Amherst. However, before the buy could occur, the police arrested Mr. Troutman on an arrest warrant based upon the May 6, 2009 controlled buy.

{¶12} Following Mr. Troutman's arrest, Detective Camarillo spoke with Christina Serrano, the woman who had been in the car with Mr. Troutman. After speaking to her, Detective Camarillo went to the trailer to participate in the search. He arrived to find the search mostly completed by other officers. Sergeant Tom Nimon had executed the search warrant, using keys that had been found on Mr. Troutman's person to gain entry to the trailer. Sergeant

Nimon discovered a bag in the freezer of the trailer, which was identified as State's Exhibit 26 at trial.

{¶13}  Officer Chris Alten testified that he also participated in the search of the trailer and found firearms, and Sergeant Nimon testified that he photographed the evidence discovered during the search of the trailer, including an Uzi machine gun, a .45 caliber handgun, and some rifles.  Officer Robert Hargreaves testified that he tested the weapons discovered in the trailer and found all of the tested weapons to be operational with the exception of a black-powder rifle. According to Detective Camarillo, the police seized some documents from the trailer, including Mr. Troutman's birth certificate, his social security card, and vehicle registrations.

{¶14}  Detective Jim Larkin testified that he participated in the July 14, 2009 operation by following Mr. Troutman that day.  He began following Mr. Troutman around 12:15 p.m., observing Mr. Troutman and Ms. Serrano cleaning a white Ford pickup truck.  He subsequently followed them to an Advance Auto Parts store in Vermillion.  After a short time in the store, the pair returned to where Detective Larkin had first observed them, remaining at that location until approximately 3:30 pm.  At 3:30, Detective Larkin saw Mr. Troutman and Ms. Serrano leave, and he followed them to the trailer at issue in this case.  Mr. Troutman entered the trailer for about ten minutes before leaving with Ms. Serrano and driving directly to the car wash where Mr. Troutman had agreed to meet the confidential informant.

{¶15}  Lieutenant Roger Watkins testified that he gave the order to arrest Mr. Troutman on July 14, 2009.  When he approached the trunk of Mr. Troutman's vehicle, which Mr. Troutman had opened before his arrest, he detected "almost an overwhelming odor of cocaine." He observed a blue plastic bag in the trunk, which was cold to the touch.  When Lieutenant

Watkins touched the bag, Mr. Troutman said that the bag was his and that Ms. Serrano did not know anything about it.

{¶16} The confidential informant testified that he did two undercover buys from Mr. Troutman. He had arranged to buy 500 grams of cocaine from Mr. Troutman on July 14, 2009, but police officers arrested Mr. Troutman prior to the buy occurring. According to the confidential informant, he had suggested purchasing drugs from Mr. Troutman because "he was the one [the informant] was [buy]ing off of at the time[ a]nd if [the informant] wanted quantity, [he] would go to [Mr. Troutman]." He testified further that, before he was working for the police, Mr. Troutman had taken him to a trailer park to show him the drugs he had stored there.

{¶17} Elizabeth Doyle, an employee of the Lorain County Crime Lab, testified that she tested and weighed the evidence seized in this case. According to Ms. Doyle, the bag discovered by Lieutenant Watkins in the trunk of Mr. Troutman's car weighed 500.3 grams and was cocaine. Ms. Doyle also testified that State's Exhibit 26, the bag found by Sergeant Nimon in the freezer of the trailer, weighed 342.3 grams. Ms. Doyle conducted multiple tests to determine the nature of the substance and concluded that the substance was a mixture of crack cocaine and regular cocaine.

{¶18} The State, through the testimony of Kathryn Lenz, submitted judgment entries evidencing that Mr. Troutman had been previously convicted of trafficking marijuana.

{¶19} Mr. Troutman argues that the State failed to produce sufficient evidence that the bag found in the trunk of Mr. Troutman's car contained 500 or more grams of cocaine because Ms. Doyle testified that her scale had a .5 gram margin of error. Nevertheless, Ms. Doyle testified that the product weighed 500.3 grams and, when viewed in the light most favorable to the State, her testimony would be sufficient to support a finding that the cocaine found in Mr.

Troutman's trunk weighed at least 500 grams. Furthermore, the confidential informant testified that he had arranged to buy 500 grams of cocaine from Mr. Troutman, which would also support the conclusion that the product actually weighed 500 grams. Thus, the State presented sufficient evidence from which the jury could find that the cocaine Mr. Troutman had possessed, which was packaged for distribution, and which he had attempted to sell, weighed more than 500 grams but less than 1000.

{¶20} Mr. Troutman also argues that the State failed to produce sufficient evidence that the substance found in the bag in his freezer contained 100 or more grams of crack cocaine. He argues that Ms. Doyle's testimony only establishes that the substance weighed 342.3 grams in total and that it was a mixture of cocaine and crack cocaine; however, the State did not actually determine the ratio of how much crack cocaine to cocaine was in the substance. However, when Mr. Troutman committed the offense, crack cocaine was defined as "a compound, mixture, preparation, or substance that is or contains *any amount* of cocaine that is analytically identified as the base form of cocaine or that is in a form that resembles rocks or pebbles generally intended for individual use." (Emphasis added.) Former R.C. 2925.01(GG). In other words, if the substance contained crack cocaine, it would be considered crack cocaine for the purposes of the statute. *See also State v. Smith*, 2d Dist. Greene No. 2010-CA-36, 2011-Ohio-2568, ¶ 12 (compiling cases supporting the conclusion that the State need not divide up a substance between the drug and the other ingredients); *State v. Moore*, 2d Dist. Montgomery No. 21863, 2007-Ohio-2961, ¶ 8 (a jury is not required to disregard the weight of moisture from the weight of crack cocaine). Furthermore, Ms. Doyle testified that she tested the substance five times and that the results indicated that it was a mixture of cocaine and crack cocaine. When viewed in the light most favorable to the State, this evidence would allow a reasonable juror to find that the

substance was 100 or more grams of crack cocaine. Accordingly, the State presented sufficient evidence that Mr. Troutman had packaged for distribution and had possessed 100 or more grams of crack cocaine.

{¶21} Regarding Mr. Troutman's conviction for having weapons while under disability, the State presented evidence that Mr. Troutman had previously been convicted of trafficking marijuana, which would establish his disability for the purposes of former R.C. 2923.13(A)(3). While Mr. Troutman was not in direct possession of the firearms, possession may be actual or constructive. *State v. Bartee*, 9th Dist. Summit No. 25266, 2010-Ohio-5982, ¶ 9.

> Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession. [M]ere access to the weapon can establish guilt, that is, ownership is not a prerequisite to determining whether someone had the weapon. Moreover, circumstantial evidence can be used to support a finding of constructive possession.

(Internal quotations and citations omitted.) *Id.*

{¶22} Mr. Troutman argues that there was no evidence presented to support a conviction for having weapons under disability because it is undisputed that the trailer did not belong to Mr. Troutman. However, this argument suggests that the evidence is insufficient merely because Mr. Troutman did not actually own the trailer even though there was evidence that he occupied it. There was testimony that Mr. Troutman frequented the trailer, including immediately before the scheduled drug buy on July 14, 2009. The confidential informant testified that he had gone to Mr. Troutman's trailer on a previous occasion and Mr. Troutman had shown him drugs that he had stored there. Furthermore, the search of the trailer uncovered Mr. Troutman's personal papers such as his birth certificate and social security card, items which would indicate more than an occasional presence at the trailer. In addition, Sergeant Nimon discovered drugs in the freezer of the trailer, and Lieutenant Watkins testified that the cocaine found in Mr. Troutman's

trunk was cold to the touch, which could indicate that the cocaine was stored in the freezer with the other drugs. Finally, when Lieutenant Watkins touched the bag containing the cocaine, Mr. Troutman announced that the bag was his and that Ms. Serrano, who was the listed occupant of the trailer, did not know anything about the package, which would support the finding that the drugs in the trailer were Mr. Troutman's and not Ms. Serrano's. Taken together and viewed in the light most favorable to the State, the above facts indicate that Mr. Troutman exercised control over the items found inside the trailer, which would include the firearms. Thus, the State presented sufficient evidence to establish that Mr. Troutman had constructive possession of the firearms discovered in the trailer.

{¶23} Mr. Troutman's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE GUILTY VERDICTS IN THIS CASE ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT [(SIC)] VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶24} In Mr. Troutman's second assignment of error, he again challenges his convictions for trafficking and possessing 500 or more grams of cocaine, trafficking and possessing 100 or more grams of crack cocaine, and having weapons under disability are against the manifest weight of the evidence. As in our discussion of Mr. Troutman's first assignment of error, we confine our analysis to the convictions Mr. Troutman challenges on appeal.

{¶25} In reviewing a challenge to the weight of the evidence, the appellate court

[m]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶26} Mr. Troutman argues that because there was insufficient evidence to support his convictions, they are also against the manifest weight of the evidence. In addition to the testimony described above, Roger Pryor testified as an expert on behalf of Mr. Troutman. Mr. Pryor testified that he initially weighed the block of cocaine and determined that it weighed 497.01 grams. He then took a small sample to test to determine whether the block was cocaine and reweighed the block, determining that it weighed 496.96. He also weighed the block of crack cocaine, finding that it weighed 335.26 grams. However, he admitted that the scale was not large enough to hold the entirety of either the cocaine or crack cocaine; thus, he had to break each sample into multiple parts and weigh those parts separately. He also admitted that he was unsure when the scale had been calibrated prior to weighing the samples, although it was done every three months. He also testified that he performed a gas chromatography analysis of the alleged crack cocaine sample, which indicated that the substance was cocaine and not crack cocaine.

{¶27} Mr. Troutman argues that, based on Mr. Pryor's testimony, the jury should not have believed Ms. Doyle's testimony that the cocaine he attempted to sell to the confidential informant weighed at least 500 grams. In considering all the evidence, the jury had to determine credibility and weight to attribute to the competing testimony. After a thorough review of the record, we cannot conclude that the jury lost its way when it believed or found Ms. Doyle's testimony to be more persuasive as opposed to Mr. Pryor's. Both Mr. Pryor and Ms. Doyle testified that their scales were regularly calibrated. Mr. Pryor testified that his scale was calibrated every three months but he did not know when it was last calibrated. By contrast, Ms. Doyle testified that she had confirmed the calibration of the scale she used to weigh the cocaine

prior to weighing it and that the scale she used to weigh the crack cocaine had its calibration confirmed every morning. Furthermore, Mr. Pryor testified that he had to divide the sample up in order to weigh it while Ms. Doyle was able to weigh the samples all at once. Based on their testimony, the jury could have found Ms. Doyle's methods to be more accurate given how recently she had confirmed the calibration of her scale and that she could weigh the sample all at once. Additionally, as noted above, the confidential informant testified that he had reached an agreement with Mr. Troutman to purchase half a kilogram of cocaine from him. This could be viewed as lending weight to Ms. Doyle's determination that there was at least 500 grams of cocaine. In light of the above, Mr. Troutman's convictions for trafficking and possessing at least 500 but less than 1000 grams of cocaine are not against the manifest weight of the evidence.

{¶28} Mr. Troutman also argues that the jury should not have found that the amount of crack cocaine was in excess of 100 grams. He points to Mr. Pryor's testimony that he believed the substance to only be cocaine. However, Mr. Pryor only tested one sample of the substance while Ms. Doyle tested the substance five different times and concluded that the substance was a mixture of cocaine and crack cocaine. Given Ms. Doyle's repeated testing, the jury could have given more weight to her testing methods and ultimate conclusion.

{¶29} Mr. Troutman also reiterates his argument that, because Ms. Doyle testified that the substance was a mixture of crack cocaine and cocaine, the jury's determination that the substance was crack cocaine is against the manifest weight of the evidence. However, as we explained above, when Mr. Troutman committed the offense, crack cocaine was defined as "a compound, mixture, preparation, or substance that is or contains *any amount* of cocaine that is analytically identified as the base form of cocaine or that is in a form that resembles rocks or pebbles generally intended for individual use." (Emphasis added.) Former R.C. 2925.01(GG).

*See also Smith*, 2011-Ohio-2568, at ¶ 12; *Moore*, 2007-Ohio-2961, at ¶ 8. Therefore, after a thorough review of the record, we cannot say that the jury lost its way and committed a manifest miscarriage of justice when it found Mr. Troutman guilty of trafficking and possessing 100 or more grams of crack cocaine.

{¶30} Finally, Mr. Troutman argues that his conviction for having weapons under disability is against the manifest weight of the evidence, reiterating verbatim his arguments from his first assignment of error. As we explained above, there was significant evidence that would support the conclusion that Mr. Troutman exercised control over the trailer and its contents: the presence of his personal documents, his repeated presence at the trailer, the drugs stored in the freezer and the cocaine in his trunk being cold to the touch, and his claim of responsibility for the package in the trunk while denying that Ms. Serrano had any knowledge of the package. Given the evidence in the case, we cannot conclude that Mr. Troutman's conviction for having weapons under disability is against the manifest weight of the evidence.

{¶31} Accordingly, Mr. Troutman's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE COURT IMPROPERLY DENIED DEFENDANT'S MOTION TO SUPPRESS BASED ON *GANT V. ARIZONA*.

{¶32} Mr. Troutman argues in his third assignment of error that the trial court erred in overruling his motion to suppress the cocaine discovered in the trunk of his car. We disagree.

{¶33} The Supreme Court of Ohio has held that

[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then

independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8.

**{¶34}** Mr. Troutman argues that the trial court improperly denied his June 28, 2010 suppression motion[2] because the search did not comply with *Arizona v. Gant*, 556 U.S. 332 (2009). We note that no evidentiary hearing was held in this case, nor does Mr. Troutman suggest that the trial court was required to hold one. *See* App.R. 16(A)(7); *State v. Harmon*, 9th Dist. Summit No. 26426, 2013-Ohio-2319, ¶ 6. However, the trial court held a hearing to address all outstanding motions, including the June 28, 2010 motion to suppress, on March 22, 2012. The record reflects that the outstanding suppression motions contained argumentation primarily focused upon the sufficiency of the affidavit supporting the search warrant of the trailer. At the hearing, the State informed the trial court that it had the officers available in case the trial court needed testimony. However, Mr. Troutman's counsel suggested that any hearing be postponed until the day of trial so that he could decide whether he wished to pursue suppression of the evidence based on the age of the arrest warrant in this case. The trial court stated that Mr. Troutman was altering the basis for his motion to suppress, and Mr. Troutman's counsel responded, "Right[.]" The State suggested that Mr. Troutman should probably file a new suppression motion given that he was now arguing that the arrest warrant was stale rather than arguing, as he had in the June 28, 2010 suppression motion, that the State could not have arrested him because it did not have an arrest warrant. The trial court agreed, stating that the June 28, 2010 motion, "because of what has come out since then, that is going to be denied. If

---

[2] Mr. Troutman filed numerous suppression motions in this case: August 12, 2009, June 28, 2010, December 28, 2011, and March 9, 2012. The June 28, 2010 motion contained an argument that the search of Mr. Troutman's vehicle violated *Arizona v. Gant*, 556 U.S. 332 (2009).

you want the other things reviewed, [Defense Counsel], you can get that filed and we will hear it either the day before or the morning before trial."

**{¶35}** Mr. Troutman did not file another suppression motion; however, his trial counsel again raised the issue of the search of his vehicle on the morning of trial. At that time, Mr. Troutman's counsel *again* changed his argument and suggested that the search was invalid because the police could not have expected to find any evidence in the car relating to the arresting crime, i.e. the drug-buy from May 6, 2009. The trial court asked, "Now, just for clarification purposes, this is a renewal of your motions that we have already denied?" to which Mr. Troutman's attorney responded, "That's true, Judge." The trial court subsequently denied Mr. Troutman's motion.

**{¶36}** It is apparent from the transcript of the proceeding that the trial court had not understood the fact that Mr. Troutman's counsel had changed the argument he was making under *Gant*. Notwithstanding the trial court's question, counsel did not clarify the substance of his argument, nor correct the trial court's misapprehension that he was renewing his previously denied motion and thus merely reiterating a prior argument the court had already rejected. In addition, Mr. Troutman did not ask the court to permit him to proffer testimony in light of the court's indication that it was denying the renewed suppression motion. Moreover, to the extent an error occurred, in light of the circumstances described above, Mr. Troutman cannot benefit from it. *See State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006–Ohio–4925, ¶ 50, quoting *Lester v. Leuck*, 142 Ohio St. 91 (1943), syllabus ("Invited error prohibits a party from 'tak[ing] advantage of an error which he himself invited or induced the trial court to make.'").

**{¶37}** Thus, we cannot conclude that the trial court committed reversible error in denying Mr. Troutman's June 28, 2010 motion to suppress. Accordingly, based on Mr.

Troutman's appellate arguments and the particular circumstances of this case, his third assignment of error is overruled.

III.

{¶38} Mr. Troutman's assignments of error are overruled, and the judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

ROBERT A. GAFFNEY, JR., Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.