[Cite as *State v. Perdue*, 2016-Ohio-4947.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

      Plaintiff-Appellee

-vs-

TERRY LYNN PERDUE

      Defendant-Appellant

JUDGES:
Hon. W. Scott Gwin, P. J.
Hon. William B. Hoffman, J.
Hon. John W. Wise, J.

Case No. 2015 CA 00181

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Canton Municipal Court, Case No 2015 TRC 3992 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | July 11, 2016 |

APPEARANCES:

For Plaintiff-Appellee

KELLY PARKER
ASSISTANT PROSECUTOR
218 Cleveland Avenue S.W.
Post Office Box 24218
Canton, Ohio  44701-4218

For Defendant-Appellant

EARLE E. WISE, JR.
122 Central Plaza North
Canton, Ohio  44702

*Wise, J.*

**{¶1}** Defendant-Appellant Terry Lynn Perdue appeals from the denial of his motion to suppress evidence and from his subsequent conviction for OVI in the Canton Municipal Court, Stark County. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows:

**{¶2}** In the early morning hours of June 6, 2015, Officer Mark Brownsword of the Waynesburg Police Department was in his cruiser observing traffic from a gas station parking lot at the intersection of Canal Street and North Mill Street. At approximately 1:35 AM, the officer observed a 1990 red Chevrolet pickup truck make a wide right turn at said intersection. The vehicle's turn was captured on the police cruiser's video camera. According to the officer's subsequent suppression hearing testimony, the truck crossed over the double yellow line by a tire width and drove back onto the double yellow line, but then crept over to the left of the double yellow line again, before returning to its correct lane of travel. *See* S.H. Tr. at 6, 15. Officer Brownsword proceeded to effectuate a traffic stop at that time.

**{¶3}** Upon approaching the truck, Officer Brownsword noticed empty beer cans in the bed of the vehicle. In conversing with Appellant Perdue, the driver of the truck, the officer observed appellant's glazed eyes, and further noticed that appellant dropped a lit cigarette onto his lap and struggled to find his driver's license. The officer also detected slurred speech and an "overwhelming" smell of alcoholic beverage. When asked to exit the truck, appellant stumbled out and continued to have difficulty balancing himself.

**{¶4}** Waynesburg Police Chief William Bath also arrived on the scene to assist. Appellant was thereupon charged with one count of operating a vehicle under the

influence of alcohol (R.C. 4511.19(A)(1)(e)), a first-degree misdemeanor, and one count of violating lanes of travel (R.C. 4511.25(A)), a minor misdemeanor.

{¶5} Appellant was arraigned on June 8, 2015. At a pretrial on June 12, 2015, appellant, with the assistance of legal counsel from the Stark County Public Defender's Office, waived speedy trial time and made a demand for a jury trial. A jury trial was originally set for August 6, 2015, but was later continued to September 4, 2015.

{¶6} On July 20, 2015, appellant filed a motion to suppress the results of the traffic stop. A hearing on said motion was set for August 4, 2015, following which the trial court denied the motion from the bench. The court filed a written judgment entry denying the motion on the same day.

{¶7} On September 3, 2015, the State filed a motion to amend the OVI charge from R.C. 4511.19(A)(1)(e) (concentration level of eleven-hundredths of one gram or more but less than two hundred thirty-eight-thousandths of one gram by weight of alcohol per one hundred milliliters of urine) to R.C. 4511.19(A)(1)(i) (concentration level of two hundred thirty-eight-thousandths of one gram or more by weight of alcohol per one hundred milliliters of urine). The court granted the amendment to the OVI charge.

{¶8} The case proceeded to a jury trial on September 4, 2015. During the jury trial, the judge simultaneously heard the minor misdemeanor lane violation charge.

{¶9} Appellant was ultimately found guilty of both charges. Following a sentencing hearing on September 8, 2015, the court sentenced appellant to 180 days in jail, suspending all but 71 days and giving credit for one day served. Appellant was also fined, given community service, a license suspension, and the assessment of six points

on his license. A judgment entry of conviction and sentence was issued on September 9, 2015.

{¶10} On October 1, 2015, appellant filed a notice of appeal. He herein raises the following two Assignments of Error:

{¶11} THE TRIAL COURT ERRED TO [THE] PREJUDICE OF THE APPELLANT WHEN IT DENIED HIS MOTION TO SUPPRESS THE EVIDENCE WHICH WAS COLLECTED AFTER APPELLANT'S VEHICLE WAS STOPPED WITHOUT PROBABLE CAUSE IN VIOLATION [OF] HIS RIGHTS UNDER THE FOURTH AND FORTEENTH [SIC] AMENDMENTS TO THE UNITED STATE [SIC] CONSTITUTION AND ARTICLE ONE OF THE OHIO CONSTITUTION, PROTECTING AGAINST UNREASONABLE SEARCHES AND SEIZURES.

{¶12} II. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN THE CONVICTIONS AND THE VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶13} In his First Assignment of Error, appellant challenges the trial court's denial of his motion to suppress the evidence obtained as a result of the officer's traffic stop.

{¶14} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine,

without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *See State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. However, the United States Supreme Court has held that "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Ornelas v. U.S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911.

**{¶15}** Before a law enforcement officer may stop a vehicle, the officer must have a reasonable suspicion, based upon specific and articulable facts, that an occupant is or has been engaged in criminal activity. *State v. Logan,* 5th Dist. Richland No. 07–CA–56, 2008–Ohio–2969, ¶ 15, quoting *State v. Gedeon* (1992), 81 Ohio App.3d 617, 618. Reasonable suspicion constitutes something less than probable cause. *State v. Carlson* (1995), 102 Ohio App.3d 585, 590. The propriety of an investigative stop must be viewed in light of the totality of the circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, paragraph one of the syllabus. In a situation where the officer has observed a traffic violation, the stop is constitutionally valid. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 9, 665 N.E.2d 1091. In sum, " ' * * * if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid.' " *State v. Adams,* 5th Dist. Licking No. 15 CA 6, 2015–Ohio–3786, ¶ 23, quoting *State v. Mays,* 119 Ohio St.3d 406, 894 N.E.2d 1204, 2008–Ohio–4539, ¶ 8.

**{¶16}** We also note that when an officer is confronted in the midst of his or her duties with a situation requiring the application of an unclear statute, the officer can still make a valid stop if the officer's mistaken interpretation of the law is reasonable. *See State v. Millerton,* 2nd Dist. Montgomery No. 26209, 2015–Ohio–34, 26 N.E.3d 317, ¶ 16, citing *Heien v. North Carolina,* —— U.S. ——, 135 S.Ct. 530, 533, 190 L.Ed.2d 475 (2014).

**{¶17}** Appellant's main emphasis in the present assigned error is on certain discrepancies between the officer's testimony and the video recording of the traffic stop in question, which was played at the suppression hearing. After viewing the video at the hearing, Officer Brownsword conceded on cross-examination and re-direct that the double yellow line is only seen onscreen for a brief time early in the sequence, and thus the back-and-forth movement of the truck is not fully reflected in the recording. *See.* Tr. at 15-17.

**{¶18}** Although the trial court found that the back-and-forth movement across the double yellow line is not evident in the video, it nonetheless concluded the video "shows the [appellant's] car in a relative point where a violation could occur, and you add that with the officer's testimony which I find reasonable enough." S.H. Tr. at 24. Some of the discrepancy asserted by appellant was addressed by Officer Brownsword, who testified that his eye level and angle of sight when in the police cruiser are different from that of the mounted dash camera. *See* S.H. Tr. at 17. It has been aptly recognized that "[b]ecause the trial court acts as the trier of fact in suppression hearings and is in the best position to resolve factual issues and evaluate the credibility of witnesses, an appellate court must accept the trial court's findings of fact if they are supported by competent,

credible evidence." *State v. Shrewsbury,* 4th Dist. Ross No. 13CA3402, 2014–Ohio–716,

¶ 11, citing *State v. Burnside,* 100 Ohio St.3d 152, 797 N.E.2d 71, 2003–Ohio–5372, ¶ 8.

Furthermore, it is well-established that an officer's reasonable articulable suspicion does

not require proof beyond a reasonable doubt that the defendant's conduct has satisfied

the elements of the offense. *State v. Willis,* 5th Dist. Licking No. 14 CA 103, 2015–Ohio–

3739, ¶ 25, citing *Westlake v. Kaplysh,* 118 Ohio App .3d 18, 20, 691 N.E.2d 1074 (8th

Dist.1997).

{¶19} Accordingly, we find no reversible error in the trial court's denial of

suppression under the facts and circumstances presented. Appellant's First Assignment

of Error is overruled.

II.

{¶20} In his Second Assignment of Error, appellant argues his OVI conviction is

not supported by sufficient evidence and is against the manifest weight of the evidence.

We disagree.[1]

{¶21} In reviewing a defendant's claim of insufficient evidence, "[t]he relevant

inquiry is whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven

beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492,

paragraph two of the syllabus. To be admissible under Evid.R. 702, expert testimony must

assist the trier of fact in determining a fact issue or understanding the evidence. *Estate of*

*Thompson v. Club Car, Inc.*, 5th Dist. Richland No. 2009-CA-0120, 2010-Ohio-2593, ¶

---

[1] Appellant has limited his arguments to the more serious OVI conviction; therefore, we will not review the marked lanes offense in this context. *See* App.R. 16(A)(7).

30, citing *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 687 N.E.2d 735 (additional citations omitted).

**{¶22}** Appellant herein was tried on an amended charge of violating R.C. 4511.19(A)(1)(i), which states as follows: "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation *** [t]he person has a concentration of two hundred thirty-eight-thousandths of one gram or more by weight of alcohol per one hundred milliliters of the person's urine."

**{¶23}** There is no dispute in the case *sub judice* the trial court instructed the jury that in order to find appellant guilty they were required to find a concentration of two hundred and thirty-eight thousandths (0.238) or more. Tr. at 196.

**{¶24}** During the trial, Criminalist Jay Spencer from the Canton-Stark County Crime Lab, who conducted the analysis of appellant's urine sample, testified as to the scientific results. Trial Tr. at 162-163. Spencer, a twenty-nine year employee of the crime lab, was recognized by the trial court as an expert witness in regard to headspace gas chromatography testing. Tr. at 155, 160. He testified on direct examination that the urine sample test result was twenty-four hundredths (0.24). Tr. at 166. He further testified that the result was expressed along with a margin of error of 0.03, plus or minus. Tr. at 166-167. The prosecutor continued his questioning as follows:

Q: And with the plus or minus variance there next to [the test result] in the percentage of probability are you able to say here today in court that you have any reason to believe that that level in Mr. Perdue's sample is anything other than that point two four percent?

A: No I don't believe so. I think it- actually running it twice and getting the correct answer I believe it is point two four.

Tr. at 169-170.

**{¶25}** On cross-examination, Spencer was asked additional questions about the margin of error of ± 0.03. He indicated that this was not a factor for human error but rather variability that is inherent in the methodology of the technique used to test. Tr. at 175. He agreed that he could say with scientific certainty that the sample fell within the range of 0.21 to 0.27. Tr. at 176.

**{¶26}** After the State rested, appellant moved for dismissal under Crim.R. 29, arguing that there was uncertainty in Spencer's testimony as to the range of values for the alcohol level. Tr. at 178. The court denied the motion. Tr. at 179. It was renewed at the end of the presentation of evidence and was denied again. Tr. at 180-181.

**{¶27}** Appellant presently urges that since a jury likely has limited knowledge of areas such as headspace gas chromatography and testing methods for alcohol concentration in the urine, the testimony of an expert chemist is paramount. Thus, appellant maintains, where the jury is given expert testimony that supported to a reasonable degree of scientific certainty a range of 0.21 to 0.27, vis-à-vis a statutory requirement of 0.238, the jury is essentially left to guess the result, based upon the 0.03 margin of error.

**{¶28}** Our research reveals several cases that have touched upon the issue raised by appellant. In *State v. Richards*, 4th Dist. Athens No. 14CA1, 2015-Ohio-669, ¶ 56, a

defendant's "margin of error" argument concerning his urine test was found to be related "to the credibility and reliability of his test" and was thus an evidentiary issue to be raised at trial. In *State v. King*, 1st Dist. Hamilton No. C-010778, 2003-Ohio-1541, a defendant argued on appeal that his blood samples were insufficient to establish a violation of R.C. 4511.19(A), given the margin of error associated with the tests for blood-alcohol content. The First District Court noted: "*** [T]he test for sufficiency requires that we give the state the benefit of all reasonable inferences from its evidence, and so we cannot assume that these particular test results were affected by error." *Id*. at ¶ 12. Moreover, in *State v. Troutman*, 9th Dist. Lorain No. 12CA010223, 2013-Ohio-4559, a defendant made a strikingly similar argument to that raised herein, except in the context of the amount of cocaine seized in a drug possession case. The Ninth District Court concluded: "Mr. Troutman argues that the State failed to produce sufficient evidence that the bag found in the trunk of Mr. Troutman's car contained 500 or more grams of cocaine because [crime lab scientist] Ms. Doyle testified that her scale had a .5 gram margin of error. Nevertheless, Ms. Doyle testified that the product weighed 500.3 grams and, when viewed in the light most favorable to the State, her testimony would be sufficient to support a finding that the cocaine found in Mr. Troutman's trunk weighed at least 500 grams." *Id.* at ¶ 19.

{¶29} In the case *sub judice*, as the State notes in its response brief, Spencer testified that appellant's urine sample, which was tested twice, yielded a result of 0.24, exceeding the 0.238 threshold. Tr. at 166, 169. He noted that in the realm of testing bodily fluids, "there's a little bit of variability" Tr. at 167. Sometimes this is due to the question of the homogeneity of the fluid samples. *Id*. However, he opined that the test result he

obtained "[was] an accurate number for the result of alcohol in the system." Tr. at 168. Spencer also testified that due to the effect of alcohol dissipation, appellant would have had a range 0.02 higher, *i.e.*, 0.23 to 0.29, at the time of the stop. *See* Tr. at 171-172, 176.

**{¶30}** Upon review of the record and transcript in a light most favorable to the prosecution, and applying the rationale of *Troutman*, we find that a reasonable finder of fact could establish beyond a reasonable doubt, via the scientific evidence presented, that appellant violated R.C. 4511.19(A)(1)(i).

**{¶31}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶32}** Although we find the focus of the argument in appellant's brief is on the sufficiency of the evidence, in the interest of justice, we have reviewed the record under the standard of *Martin* and we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's conviction be reversed and a new trial ordered.

**{¶33}** Appellant's Second Assignment of Error is therefore overruled.

{¶34} For the foregoing reasons, the judgment of the Canton Municipal Court, Stark County, Ohio, is hereby affirmed.


By: Wise, J.

Gwin, P. J., concurs.

Hoffman, J., concurs in part and dissents in part.



JWW/d 0620

*Hoffman, J., concurring in part and dissenting in part*

**{¶35}** I concur in the majority's analysis and disposition of Appellant's first assignment of error.

**{¶36}** I respectfully dissent from the majority's disposition of Appellant's second assignment of error. While I agree with the majority the evidence was sufficient to support his conviction, I find the .03 variance within the actual test result renders Appellant's conviction against the manifest weight of the evidence.[2]

**{¶37}** I would reverse Appellant's conviction under R.C. 4511.19(A)(1)(i). I would enter conviction under R.C. 4511.19(A)(1)(e) and remand the matter for sentencing.

---

[2] I find a distinction between the effect of a permissible variance in the calibration of a breath-testing machine and the effect of a variance in the actual test result.