THE STATE OF OHIO, APPELLEE, *v.* MAYS, APPELLANT.

[Cite as *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539.]

(No. 2007–1302—Submitted May 6, 2008—Decided September 16, 2008.)

———————

MOYER, C.J.

{¶ 1} The Fifth District Court of Appeals has certified this case to this court for review and final determination pursuant to Section 3(B)(4), Article IV, Ohio Constitution and App.R. 25. The Fifth District found its judgment to be in

conflict with the judgment of the Third District Court of Appeals in *State v. Phillips*, Logan App. No. 8–04–25, 2006-Ohio-6338, 2006 WL 3477003. We determined that a conflict exists and agreed to resolve the following issue: "May a police officer who witnesses a motorist cross a right white edge line and without any further evidence of erratic driving or that the crossing was done in an unsafe manner make a constitutional stop of the motorist?" We answer this question in the affirmative.

{¶ 2} The facts of this case are not complicated. An Ohio State Highway Patrol trooper was driving in Newark, Ohio, when he saw the vehicle in front of him drift across the white fog line by approximately one tire width. A few moments later, he observed the same thing: the vehicle drifted across the right fog line by approximately a tire width and then drifted back into the lane. The trooper continued following the vehicle for approximately one and a half miles, and he observed no further traffic violations. The trooper then signaled to the driver to pull over the vehicle.

{¶ 3} The trooper approached the vehicle and asked the driver, appellant Christopher Mays, for his driver's license. Mays handed the trooper his credit card instead, and the trooper noticed that Mays had blood-shot, glassy eyes and smelled of alcohol. The trooper had Mays step out of the car and asked him to participate in field sobriety tests, but Mays refused to participate. The trooper then arrested Mays, and Mays was subsequently charged with operation of a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and crossing marked lanes in violation of R.C. 4511.33.

{¶ 4} The trial court sustained the defendant's motion to suppress after hearing the evidence and concluding that the trooper did not have a reasonable and articulable suspicion to support the traffic stop.

{¶ 5} The court of appeals reversed the judgment of the trial court. The court of appeals stated that the only issue in this case was "whether crossing the white line on the right side of the road two times, together with a slight weaving within one's lane of travel, is sufficient articulable suspicion to justify a traffic stop." *State v. Mays*, Licking App. No. 2006–CA–00097, 2007-Ohio-2807, 2007 WL 1651833, ¶ 10.

{¶ 6} The court held that, under the totality of circumstances, the trooper had a reasonable and articulable suspicion that appellant may have violated the statute that requires vehicles to stay within the lane markings in most circumstances, and therefore, he was justified in stopping appellant's vehicle. Id. at ¶ 20. Further, the court held that "[w]hile a defendant may argue that there were reasons for which he or she should not have been convicted of a violation of [the marked-lanes statute], an officer is not required to have proof beyond a reasonable doubt that someone has violated the marked lane statute in order to

make a traffic stop nor must an officer eliminate all possible innocent explanations for someone going over the edge lines. The officer need only have a reasonable suspicion based upon articulable facts that the driver violated the marked lanes statute. (Citation omitted.)" Id. at ¶ 20.

## I. Analysis

{¶ 7} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures. *State v. Orr* (2001), 91 Ohio St.3d 389, 391, 745 N.E.2d 1036. The United States Supreme Court has stated that a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime. *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660; *Berkemer v. McCarty* (1984), 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317, quoting *United States v. Brignoni–Ponce* (1975), 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607. Further, "[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, at paragraph one of the syllabus.

{¶ 8} Therefore, if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid.

{¶ 9} The trooper in this case stopped appellant for violating R.C. 4511.33, which states:

{¶ 10} "(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:

{¶ 11} "(1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."

### A. Reasonable Suspicion

{¶ 12} "The Fourth Amendment imposes a reasonableness standard upon the exercise of discretion by government officials. *Delaware v. Prouse* (1979), 440 U.S. 648, 653–654, 99 S.Ct. 1391, 59 L.Ed.2d 660. 'Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' Id. at 654, 99 S.Ct. 1391, 59 L.Ed.2d 660. To justify a

particular intrusion, the officer must demonstrate 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889." *State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 11. "The 'reasonable and articulable suspicion' analysis is based on the *collection* of factors, not on the individual factors themselves." (Emphasis sic.) Id. at ¶ 19.

{¶ 13} As the United States Supreme Court elaborated in *Berkemer v. McCarty,* a police officer who lacks probable cause but whose observations lead him reasonably to suspect that a particular person's behavior is criminal may detain the person briefly to investigate the circumstances that provoked the suspicion. 468 U.S. at 439, 104 S.Ct. 3138, 82 L.Ed.2d 317.

{¶ 14} " '[T]he stop and inquiry must be "reasonably related in scope to the justification for their initiation." ' [*Brignoni–Ponce,* 422 U.S. at 881, 95 S.Ct. 2574, 45 L.Ed.2d 607] (quoting *Terry v. Ohio,* supra, 392 U.S. [at 29, 88 S.Ct. 1868, 20 L.Ed.2d 889] ). Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released." *Berkemer,* 468 U.S. at 439–440, 104 S.Ct. 3138, 82 L.Ed.2d 317. The opposite result is also true: if the detainee's answers provide the officer with probable cause to arrest him, then it is proper for the detainee to be arrested.

{¶ 15} Appellant argues that his actions in this case—twice driving across the white edge line—are not enough to constitute a violation of R.C. 4511.33. He claims that "R.C. 4511.33(A) does not prohibit leaving one's lane" and that "absolute observance of the lane markings is not required."

{¶ 16} Appellant's argument is not persuasive. R.C. 4511.33 requires a driver to drive a vehicle entirely within a single lane of traffic. When an officer observes a vehicle drifting back-and-forth across an edge line, the officer has a reasonable and articulable suspicion that the driver has violated R.C. 4511.33.

{¶ 17} Appellant further argues that the stop was unjustified because there was no reason to suspect that he had failed to first ascertain that leaving the lane could be done safely or that he had not stayed within his lane "as nearly as [was] practicable" within the meaning of R.C. 4511.33(A)(1). R.C. 4511.33 does provide for certain circumstances in which a driver may cross a lane line without violating the statute. However, the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic

stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge.

{¶ 18} R.C. 4511.33(A)(1) provides that a driver must remain within the lane markings "as nearly as is practicable" and that a driver shall not move from a lane "until the driver has first ascertained that such movement can be made with safety." The phrase "as nearly as is practicable" does not give the driver the option to remain within the lane markings; rather, the phrase requires the driver to remain within the lane markings unless the driver cannot reasonably avoid straying.

{¶ 19} We agree with the Seventh District Court of Appeals' explanation of R.C. 4511.33 in *State v. Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, 771 N.E.2d 331. The *Hodge* court stated: "The legislature did not intend for a motorist to be punished when road debris or a parked vehicle makes it necessary to travel outside the lane. Nor, we are quite certain, did the legislature intend this statute to punish motorists for traveling outside their lane to avoid striking a child or animal. We are equally certain the legislature did not intend the statute to give motorists the *option* of staying within the lane at their choosing. Common sense dictates that the statute is designed to keep travelers, both in vehicles and pedestrians, safe. The logical conclusion is that the legislature intended only special circumstances to be valid reasons to leave a lane, not mere inattentiveness or carelessness. To believe that the statute was intended to allow motorists the option of when they will or will not abide by the lane requirement is simply not reasonable." (Emphasis sic.) Id. at ¶ 43.

{¶ 20} The court in *Hodge* also stated that it did not intend for its decision to stand for "the proposition that movement within one lane is a per se violation giving rise to reasonable suspicion, nor does inconsequential movement within a lane give law enforcement carte blanche opportunity to make an investigatory stop." Id., 147 Ohio App.3d 550, 2002-Ohio-3053, 771 N.E.2d 331, at ¶ 45. However, when an officer could reasonably conclude from a person's driving outside the marked lanes that the person is violating a traffic law, the officer is justified in stopping the vehicle.

{¶ 21} In this case, the trial court found that the trooper observed appellant drift across the white fog line on two occasions. The trooper had a reasonable and articulable suspicion that appellant had violated R.C. 4511.33, and after approaching the vehicle and speaking with appellant, the trooper had probable cause to arrest him for driving while under the influence of alcohol. We find no error in the trooper's decision.

## B. Probable Cause

{¶ 22} Appellant argues that an officer is warranted in stopping a vehicle only if the officer has probable cause to believe that a motorist has committed a crime.

Appellant cites *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, in which we held that "a traffic stop based upon probable cause is not unreasonable, and that an officer who makes a traffic stop based on probable cause acts in an objectively reasonable manner." Id. at 11, 665 N.E.2d 1091. Further, we held that "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Id. at syllabus.

{¶ 23} Appellant's reliance on *Erickson* and on *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, is misplaced. Probable cause is certainly a complete justification for a traffic stop, but we have not held that probable cause is required. Probable cause is a stricter standard than reasonable and articulable suspicion. *State v. Evans* (1993), 67 Ohio St.3d 405, 411, 618 N.E.2d 162. The former subsumes the latter. Just as a fact proven beyond a reasonable doubt has by necessity been proven by a preponderance, an officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop. *Erickson* and *Whren* do not hold otherwise.

{¶ 24} In this case, the trooper observed appellant twice cross the white edge line, and he was reasonable in concluding that appellant's driving was in violation of R.C. 4511.33. Therefore, the trooper not only had a reasonable and articulable suspicion to stop appellant's vehicle, he also had probable cause.

## II. Conclusion

{¶ 25} In conclusion, a traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving.

Judgment affirmed.

LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CALABRESE, JJ., concur.

PFEIFER and O'DONNELL, JJ., concur in judgment only.

ANTHONY O. CALABRESE JR., J., of the Eighth Appellate District, sitting for CUPP, J.

———

Tricia M. Moore, Assistant Newark Director of Law, for appellee.

Robert E. Calesaric, for appellant.