[Cite as *State v. Barzacchini*, 2014-Ohio-3467.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2014CA0009 |
| MATTHEW JAMES BARZACCHINI | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:       Criminal appeal from the Canton Muncipal
                               Court, Case No. 2013TRC07283


JUDGMENT:                      Reversed and Remanded


DATE OF JUDGMENT ENTRY:        August 11, 2014


APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

JOSEPH MARTUCCIO                       SAMUEL FERRUCCIO, JR.
Canton City Law Director               JEFF SERRA
TYRONE D. HAURITZ                      301 Cleveland Avenue N.W.
Canton City Prosecutor                 Canton, OH 44702
KATIE ERCHICK
Assistant City Prosecutor
218 Cleveland Ave. S.W.
Canton, OH  44701-4218

*Gwin, P.J.*

**{¶1}** Appellant, Matthew J. Barzacchini ["Barzacchini"] appeals the December 20, 2013 judgment of the Canton Municipal Court, Stark County, Ohio overruling his motion to suppress.

### Facts and Procedural History

**{¶2}** On November 2, 2013, Barzacchini was driving southbound on Cleveland Avenue in Uniontown, Stark County, Ohio. Officer Joshua Pirogowicz of the Uniontown Police Department was in uniform in a marked police car. His car was stationary facing westbound next to Cleveland Avenue, near Pontius Street.

**{¶3}** As Officer Pirogowicz sat stationary, Barzacchini's vehicle drove past him. Barzacchini's vehicle had the driver's side window rolled down. Officer Pirogowicz testified,

> The driver turned and there was exaggerated arm movements that came from the vehicle as well as loud audio- audible noise, screaming, yelling, etcetera.

(T. at 6). Officer Pirogowicz was concerned that an assault may have been occurring in the vehicle. Officer Pirogowicz testified that he could not see the back compartment of the car. He therefore decided "to initiate a traffic stop based solely on the exigent, possible exigent, circumstances that were presented in front of me by the defendant." Id.

**{¶4}** Officer Pirogowicz pulled onto Cleveland Avenue and followed the vehicle. Officer Pirogowicz testified he did not witness any indicia of impaired driving or speeding and that Barzacchini did not commit any traffic violations prior to Officer

Pirogowicz activating his emergency lights to initiate a traffic stop of the Barzacchini's vehicle. The vehicle made a right turn onto Broad Vista. Officer Pirogowicz testified that the vehicle committed a marked lanes violation. Officer Pirogowicz activated his overhead lights to initiate a traffic stop at approximately 12:12 a.m. in the 3600 block of Broad Vista. The vehicle did not stop, so Officer Pirogowicz activated his siren. The vehicle continued to travel for approximately three blocks before pulling into a private driveway.

{¶5} Barzacchini immediately opened his car door. Officer Pirogowicz ordered him to stay in the car because he could not see inside of the vehicle and did not know if there were other people in the vehicle and whether an assault had occurred.

{¶6} Officer Pirogowicz approached the vehicle to investigate the situation. During this investigation, Barzacchini remained inside of his vehicle. Officer Pirogowicz testified that as he is speaking with Barzacchini, he smelled a strong odor of an alcoholic beverage coming from Barzacchini's breath. Officer Pirogowicz also observed blood shot eyes, slurred speech, and very slow and delayed movements. Barzacchini explained that everything was fine, no assault had occurred and that he was having a verbal argument with his wife over the phone. Barzacchini admitted to Officer Pirogowicz that he had consumed a couple of beers at his friend's house.

{¶7} At this time, Barzacchini's wife arrived home and verified that the couple had been in an argument and that the screaming and arm movements Officer Pirogowicz had observed were most likely because of the argument. Officer Pirogowicz testified that at this point, he knew no assault had occurred, However, based on his observations during his investigation, Officer Pirogowicz asked Barzacchini to step out

of his vehicle to perform standardized field sobriety tests, after which Barzacchini is arrested and charged with OVI.

{¶8} Barzacchini filed a Motion to Suppress arguing there was no reasonable, articulable suspicion of criminal activity and/or any lawful cause to stop the his vehicle. By Judgment Entry filed December 20, 2013, the trial court overruled Barzacchini's motion to suppress. In response to Barzacchini's motion, the trial court filed Findings of Fact and Conclusions of Law on January 9, 2014.

{¶9} Barzacchini pled no contest to charges of operating a motor vehicle under the influence of alcohol and the marked lanes violation. The Trial Court found him guilty of both charges.

{¶10} The Trial Court sentenced Barzacchini to pay a fine of $800.00 plus court costs on both counts, complete 60 hours of community service, serve ten (10) days at the Stark County Jail, and suspended the remaining 170 jail days. Additionally, the Trial Court suspended Barzacchini's driver's license for a period of one year beginning November 2, 2013 and assessed six points against the Barzacchini's driver's license.

*Assignments of Error*

{¶11} Barzacchini raises three assignments of error,

{¶12} "I. THE TRIAL COURT'S FINDINGS OF FACT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE BY FAILING TO APPLY THE APPROPRIATE TEST AND/OR CORRECT LAW TO ITS FINDINGS OF FACT.

{¶13} "II. THE TRIAL COURT ERRED IN HOLDING THAT THE STOP OF THE APPELLANT'S VEHICLE DID NOT VIOLATE THE APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BECAUSE NO REASONABLE AND ARTICULABLE SUSPICION OF CRIMINAL ACTIVITY EXISTED TO JUSTIFY THE STOP OF THE APPELLANT'S VEHICLE.

{¶14} "III. THE TRIAL COURT ERRED IN FINDING THAT EXIGENT CIRCUMSTANCES EXISTED WHICH ALLOWED OFFICER PIROGOWICZ TO STOP THE APPELLANT'S VEHICLE WITHOUT A REASONABLE AND ARTICULABLE SUSPICION OF CRIMINAL ACTIVITY."

I, II & III.

{¶15} Because we find the issues raised in Barzacchini's first, second and third assignments of error are closely related, for ease of discussion, we shall address the assignments of error together.

{¶16} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist.1998); *State v. Medcalf*, 111

Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

{¶17} The Ohio Supreme Court has emphasized that probable cause is not required to make a traffic stop; rather the standard is reasonable and articulable suspicion. *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4358, 894 N.E.2d 1204, ¶ 23. Further, neither the United States Supreme Court nor the Ohio Supreme Court considered the severity of the offense as a factor in determining whether the law enforcement official had a reasonable, articulable suspicion to stop a motorist. *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89(1996); *City of Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091(1996).

**COMMUNITY CARETAKING EXCEPTION TO FOURTH AMENDMENT**

{¶18} The community caretaking exception to the Fourth Amendment is rooted in *Cady v. Dombrowski,* where the U.S. Supreme Court noted that,

> [b]ecause of the extensive regulation of motor vehicles and traffic,
>
> and also because of the frequency with which a vehicle can become

disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

{¶19} One of the first cases to enunciate a standard for police stops to assist motorists, unrelated to penal or regulatory purposes, was *United States v. Dunbar*, 470 F.Supp. 704 (D.Conn 1979.), *aff'd*, 610 F.2d 807 (2nd Cir.1979). In this case, an officer stopped a motorist after observing that the license plate was from a neighboring state and deducing from the manner in which the driver was proceeding that he was lost. In *Dunbar*, the public interest in making the stop versus the individual's interest in privacy was the subject of discussion by the court,

It would be too extravagant to contend that a benign purpose of rendering assistance could never justify the stop of a motorist. The most rigorous view of the Fourth Amendment would not bar police officers from stopping a motorist to inform him that a bridge beyond a bend in the road had just been washed away. Some might contend that, as soon as time

permitted, even this situation could be handled less intrusively by placing barricades to close the road, but a stopping of cars to warn and suggest alternate routes scarcely seems unreasonable. Other situations can be imagined where a road remains passable, yet police officers legitimately promote safety by stopping motorists to inform them about road hazards.

Aiding a motorist believed to be lost advances no substantial safety interest. It is arguable that the lost motorist, if not assisted, might interfere with the peacefulness of a neighborhood at 1:00 a.m. by seeking directions from a householder, but that concern is tenuous. Moreover, the interest in aiding the motorist, for his own benefit or that of the local residents, can in most situations be as well served by having the police officer make his presence known and leaving to the motorist the decision as to whether to stop and seek directions. Thus, while the interest of government in aiding a lost motorist may be considered "legitimate" within the meaning of [*Delaware v.] Prouse* [U.S., 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)], it is an interest entitled to extremely slight weight in the balance mandated by [*United States v.]Brignoni-Ponce*, [42 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)].

On the individual's side of the balance, the interest is also not especially weighty. The privacy intrusion is brief and normally uneventful. However, it does entail the risk of creating "substantial anxiety," *Delaware v. Prouse, supra*, U.S. at, 99 S.Ct. at 1391, and is a selective stopping that is viewed by the Supreme Court as more intrusive than a stopping of all

motorists at a given point. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 558, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *United States v. Ortiz*, 422 U.S. 891, 894-895, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975).

Judicial scales are not well calibrated to compare the slight governmental and privacy interests on either side of the balance in this case. Two considerations persuade me that the balance ought to be struck on the side of privacy. The policy of the Fourth Amendment is to minimize governmental confrontations with the individual. That policy is not furthered by permitting police officers to stop citizens not even remotely suspected of any conduct in violation of criminal or regulatory standards, simply for the well-intentioned purpose of providing directions. Moreover, however well-intentioned the stopping may have been in this case, the risk of abuse is real. The "plain view" principle has spawned numerous cases where the police officer says, "I saw him drop the package." See Comment, "Police Perjury in Narcotics 'Dropsy' Cases: A New Credibility Gap," 60 Geo. L.J. 507 (1971). The investigative stop authority announced in *Terry v. Ohio, [supra*], has led to cases where the officer says, "He looked suspicious." [Citations omitted.] The Fourth Amendment stands against initiating a new line of cases in which the officer says, "I thought he was lost."

*Dunbar*, 470 F.Supp at 707-708. In Ohio, the Supreme Court has held,

The community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement allows a law-enforcement officer with

objectively reasonable grounds to believe that there is an immediate need for his or her assistance to protect life or prevent serious injury to effect a community-caretaking/emergency-aid stop.

*State v. Dunn,* 131 Ohio St.3d 2012-Ohio-1008, 964 N.E.2d 1037, syllabus.

### *Test as Applied to this Case*

{¶20} In the case at bar, Officer Pirogowicz was not acting within his duties of detection, investigation, or acquisition of evidence relating to the commission of crimes. Therefore, we must determine if the officer was acting within a bona fide community caretaker function.

{¶21} In the case at bar, Officer Pirogowicz's concern was aroused as a car drove past him in the opposite direction on a dark and rainy night. Officer Pirogowicz's only indicia were some exaggerated arm movements and some loud audible sounds. Officer Pirogowicz could not hear what was being said, if anything. Officer Pirogowicz could not see anyone inside the car other than the driver.

{¶22} Under these circumstances, Officer Pirogowicz's generalized concern for safety could certainly have justified him in approaching the car and making contact with their occupants in a nonintrusive manner. However, absent more specific signs that the occupant of the car needed assistance, Officer Pirogowicz was not justified in taking actions that amounted to a fourth amendment seizure. This is particularly true in the present case, because, according to Officer Pirogowicz, he witnessed no further signs of distress coming from the car as he followed it on Cleveland Avenue. Officer Pirogowicz testified he did not witness any indicia of impaired driving or speeding and

that Barzacchini did not commit any traffic violations prior to Officer Pirogowicz activating his emergency lights to initiate a traffic stop of Barzacchini's vehicle.

{¶23} Officer Pirogowicz testified that he observed the vehicle commit a marked lanes violation. R.C. 4511.33, provides, in part,

(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:

(1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.

* * *

{¶24} From our own review of the video taken from Officer Pirogowicz's cruiser camera, we observe that Barzacchini's vehicle did not travel in one lane and then change to another lane when the roadway made a soft left turn. Barzacchini was the only vehicle on this portion of the street when he made the turn and he never actually went left of center

{¶25} Accordingly, since Barzacchini did not violate R.C. 4511.33, this could not provide Officer Pirogowicz with an articulable and reasonable suspicion that Barzacchini was operating his motor vehicle in violation of the law.

{¶26} Under the circumstances presented in this case, police would be justified in stopping a motor vehicle leaving a sporting event, a concert, a rally or any other

activity upon nothing more than one or more occupant's ruckus behavior. We do not believe this to have been intended. The actions that Officer Pirogowicz had witnessed did not provide a basis to reasonably believe that there was an immediate need for his assistance to protect life or prevent serious injury. We conclude that the stop of Barzacchini's vehicle was not permissible under the community caretaker test as defined in *State v. Dunn,* 131 Ohio St.3d 2012-Ohio-1008, 964 N.E.2d 1037.

**{¶27}** Barzacchini's three assignments of error are sustained.

**{¶28}** The judgment of the Canton Municipal Court overruling Barzacchini's motion to suppress is vacated. This cause is remanded to that court for further proceedings according to law.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur