[Cite as *State v. Hall*, 2016-Ohio-3273.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26694 |
| | : | |
| v. | : | T.C. NO. 14CR1561 |
| | : | |
| DAVONTAE D. HALL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___3rd___ day of ___June___, 2016.

. . . . . . . . . . .

ANN M. GRABER, Atty. Reg. No. 0091731, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

PAMELA L. PINCHOT, Atty. Reg. No. 0071648, 345 N. Main Street, Suite 2, Springboro, Ohio 45066
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Davontae D. Hall appeals from a judgment of the Montgomery County Court of Common Pleas, which found him guilty of having weapons under disability and carrying a concealed weapon. Hall had entered a no contest plea to the offenses after the trial court overruled his motion to suppress evidence. For the following reasons, the

judgment of the trial court will be affirmed.

*Facts and Procedural History*

**{¶ 2}** Dayton Police Officers Joseph Drumm and Jeff Hieber testified at the suppression hearing. On April 28, 2014, at approximately 5:00 p.m., the two officers were sitting in uniform and in two different cruisers in the parking lot of an apartment complex at 1957 Riverside. They had just completed a "dog call" or "peace officer call" in the complex, and they were able to talk to one another from their cruisers. As they consulted their computers about where to proceed, they observed a white Chrysler "abruptly" pull into a parking spot near them. Both officers immediately noted the dark window tinting on the car, which they could not see through at all, and they agreed to approach the driver, Hall, who was exiting the car.

**{¶ 3}** Hall did not have a driver's license with him, but he told the officers that he had a valid license. The officers asked Hall to wait in Hieber's cruiser while they verified his license and identification, and Hall agreed. Officer Drumm went to Hall's car with a "tint meter" to measure the window tint, while Officer Hieber checked on Hall's identification and license status. In order to perform the tint reading, Drumm had to open the driver's door of Hall's car and roll the window down several inches. When he did so, he smelled a "strong odor" of burnt marijuana. Hieber learned that Hall's driver's license was suspended, and he approached Drumm to discuss how to proceed. As he did so, Hall began banging and yelling from the rear of Hieber's cruiser. An "altercation" between Hieber and Hall ensued; after Hieber talked with Hall, Hall tried to prevent Hieber from closing the cruiser door and resisted being placed in handcuffs. (The officers did not provide many details about the altercation in their testimonies, but video recordings

were played and admitted into evidence at the hearing.) By that point, the officers intended to arrest Hall for driving with a suspended license and assault on a peace officer. They conducted an inventory search of Hall's vehicle in preparation for towing it, in accordance with police department policy which permits towing the car of a person placed under arrest. During the search, the officers discovered marijuana in the console and a loaded semi-automatic handgun under the driver's seat.

{¶ 4} On April 29, 2014, Hall was charged in the Dayton Municipal Court with one count of carrying a concealed weapon and two counts of having weapons while under disability (prior offense of violence and prior drug conviction). On May 27, 2014, he was indicted on the same charges in the Montgomery County Court of Common Pleas. Hall pled not guilty and filed a motion to suppress, in which he alleged that the officers had lacked reasonable suspicion and probable cause for his warrantless search and seizure.[1] On August 27, 2014, the trial court conducted a hearing on the motion.

{¶ 5} After the hearing, the trial court found that the officers had "not only reasonable suspicion, but probable cause" to believe that Hall had committed a traffic violation, because of their inability to see through the tint of his windows at all. The court further found that Hall entered Officer Hieber's cruiser "voluntarily," that the smell of marijuana coming from the vehicle provided the officers with probable cause for a search of the vehicle, and that the vehicle was searched pursuant to the city's tow policy. The court overruled the motion to suppress evidence.

---

[1] The motion to suppress also alleged that Hall's *Miranda* rights were violated with respect to statements that he made. This issue was not addressed at the suppression hearing, however, except that the parties stipulated that Hall had been informed of his *Miranda* rights by a third police officer.

**{¶ 6}** On September 30, 2014, Hall entered no contest pleas on all three counts in the indictment. The court merged the two counts of having weapons under disability, and it sentenced Hall to 36 months for having weapons under disability and to 18 months for carrying a concealed weapon, to be served concurrently. The court further ordered that the weapon be forfeited to the police department and that Hall pay court costs, and it notified Hall that he may be subject to three years of post-release control.

**{¶ 7}** Hall raises one assignment of error on appeal, in which he challenges the trial court's determination that the officers had a reasonable, articulable suspicion of unlawful activity when they stopped him. He does not challenge the bases for the search of his vehicle.

**{¶ 8}** As a preliminary matter, we note that, in his brief and at oral argument, respectively, Hall asserts that the trial court found 1) that the police "were not conducting an investigative stop" because Hall was already out of his car when the officers approached him, and 2) that Hall consented to his encounter with the officers. The court did not make such findings; rather, it found that Hall "got into the cruiser voluntarily" after the officer informed him that they intended to check his identification. The trial court neither found that the encounter was consensual nor that it was "not * * * an investigative stop." The court did note that the car was already stopped when the officers approached it (i.e., the officers did not effectuate a stop), but it also noted that the officers already had reasonable suspicion and probable cause to suspect a traffic violation at that time. With these facts in mind, we turn to the court's conclusion that the officers had reasonable, articulable suspicion to investigate Hall for a traffic violation.

*Unreasonable Search and Seizure*

**{¶ 9}** The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry,* police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a minor traffic violation. *Id.*; *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8; *State v. Martin,* 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry.* The existence of reasonable suspicion is determined by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard,* 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews,* 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

**{¶ 10}** " 'Reasonable, articulable suspicion' is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' " *State v. Fears,* 8th Dist. Cuyahoga No. 94997, 2011-Ohio-930, ¶ 5, citing *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *State v. Scott,* 2d Dist. Clark No. 2013 CA 104, 2014-Ohio-4963, ¶ 12.

**{¶ 11}** At a hearing on a motion to suppress evidence, the trial court, as trier of fact, is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Drumm,* 2015-Ohio-2176, 36 N.E.3d 769, ¶ 9 (2d Dist.), citing *State v. Hopfer,* 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996). An appellate court must accept any findings of fact by the trial court which are supported by competent, credible evidence, but it does not defer to the trial court on questions of law. *Id.,* citing *State v.*

*Curry,* 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994).

{¶ 12} We have repeatedly held that a traffic stop for a suspected window-tint violation is lawful. *See, e.g., State v. Cole*, 2d Dist. Montgomery No. 26576, 2015-Ohio-5295, ¶ 16; *Scott,* 2d Dist. Clark No. 2013 CA 104, 2014-Ohio-4963, at ¶ 12; *State v. Carson,* 2d Dist Montgomery No. 26505, 2015-Ohio-4110; *State v. Dudley,* 2d Dist. Montgomery No. 24904, 2012-Ohio-960, ¶ 8, citing *State v. Taylor,* 114 Ohio App.3d 416, 683 N.E.2d 367 (2d Dist.1996). The Ohio Supreme Court has also held that, whether pretextual or not, a traffic violation, including a tint violation, gives an officer a reasonable, articulable suspicion justifying a traffic stop. *See State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 20. Ohio law requires that, where windows are tinted, 70% of light pass through a windshield and 50% of light pass through the front side windows. Ohio Adm. Code 4501-41-03(A)(2)-(A)(3).

{¶ 13} Officers Drumm and Hieber each testified that the tint on Hall's car windows was so dark that it immediately caught their attention and that they could not see inside his vehicle at all. This observation provided them with a reasonable, articulable suspicion which justified further investigation. Regardless of any issue of consent, a sequence of events rapidly ensued from which the officers had several additional bases to investigate Hall, including his driving without a license in his possession and the smell of burnt marijuana coming from his car. The trial court did not err in concluding that the officers' actions did not violate Hall's constitutional rights.

{¶ 14} Hall asserts in his brief and at oral argument that this court "has ruled that a police officer has the constitutional authority to stop an individual for a window tint violation if the officer has the experience to form a reasonable suspicion of a window tint

violation," citing *State v. Mackey*, 2d Dist. Montgomery No. 22244, 2008-Ohio-3621.    He then argues that the evidence in this case did not show that Officers Drumm and Hieber had the requisite training and experience to effectuate a stop for a window tint violation. In *Mackey,* we noted that the officer who made the traffic stop was a 25-year veteran police officer and had "substantial experience in recognizing window tint violations."    We did not hold that an officer is required to have any particular expertise in window tinting to effectuate such a stop.    Officers Drumm and Hieber each had many years of experience on the police force and testified that they had effectuated many stops for window tint violations.    Our holding in *Mackey* is not inconsistent with the authority of such officers to conduct traffic stops for window tint violations.

{¶ 15}  The assignment of error is overruled.

{¶ 16}  The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

FAIN, J. and WELBAUM, J., concurs.

Copies mailed to:

Ann M. Graber
Pamela L. Pinchot
Hon. Mary Katherine Huffman