[Cite as *In re D.E.*, 2016-Ohio-4959.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 103554

---

## IN RE: D.E.
## A Minor Child

---

## JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga Court of Common Pleas
Juvenile Division
Case No. DL15107865

**BEFORE:** Jones, A.J., Keough, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** July 14, 2016

**ATTORNEYS FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, Ohio 44067

Robert L. Tobik
Cuyahoga County Public Defender

BY: Audrey Del Valle
Assistant County Public Defender
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Brandon A. Piteo
        Scott C. Zarzycki
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., A.J.:

**{¶1}** In this appeal, the juvenile, D.E., challenges the trial court's decision to deny his motion to suppress.   We affirm.

**{¶2}** In June 2015, D.E. was charged in a two-count complaint.   Count 1 charged having a weapon while under disability, and contained one- and three-year firearm specifications.   Count 2 charged carrying a concealed weapon.    The defense filed a motion to suppress, and the trial court held a hearing.   The following testimony was elicited at the hearing.

**{¶3}** At the time in question, which was approximately 10:00 p.m. in June 2015, two detectives from the Cleveland Police Department's gang impact unit — Colin Ginley and Brian Middaugh — were on patrol in the area of East 105th Street around St. Clair and Superior Avenues.   Both detectives testified that this was a "high crime" area, they routinely patrolled the area, and that many of the residents knew them and were familiar with the vehicles they drove.[1]   The detectives testified that the area is considered high crime because of the frequent arrest rate, poor lighting, and large number of abandoned houses.   They further testified that, although they are members of the gang impact unit, they frequently conduct other police business unrelated to gang activity, such as traffic stops.

---

[1]They were not in a "standard" police cruiser; rather, they were in an unmarked black Suburban, with lights and sirens located inside.

**{¶4}** As the detectives were driving down one of the streets in the area, they observed approximately ten males in the middle of the street. A couple of the males were on bicycles. According to the detectives, no one in the group appeared to be going in any direction; rather, they appeared to just be congregating in the area. The detectives testified that they saw "numerous" violations of the Cleveland Codified Ordinances being committed by the group. They initially drove past the group, but then turned around and headed back toward them, intending to stop them because of their violations of the city's ordinances. They also called for back-up assistance, which they routinely do in high crime areas and situations involving numerous people.

**{¶5}** By the time they reached the area where the group had been, all but two of the individuals — D.E. and another juvenile — had dispersed and the back-up assistance had arrived. Detectives Ginley and Middaugh had the sirens and lights on their vehicle activated. Detective Ginley testified that D.E. was riding the bicycle, interweaving between the sidewalk and the street, while the other juvenile was walking, also interweaving between the sidewalk and the street.

**{¶6}** The detectives, as well as the back-up officers, exited their vehicles and told D.E. and the other juvenile to put their hands up, which they requested because of the nature of the area and their inability to see due to the poor lighting. The other juvenile complied, but D.E. did not. Instead, he got off his bicycle, and according to Detective Ginley, started running; Detective Middaugh testified that D.E. was walking at a fast pace.

{¶7} D.E. headed in the direction of Detective Ginley, who believed that D.E. did not initially see him. Detective Ginley saw D.E. reach for his waistband; the detective drew his service weapon at that time. D.E. pulled a gun out of his waistband, and moments later, threw it to the ground. The gun was loaded. D.E. was arrested for carrying a concealed weapon. He was also cited for riding a bicycle on a sidewalk and lacking a signaling device on his bicycle, which the detectives testified were violations of Cleveland Codified Ordinances.

{¶8} The juvenile court found that the detectives had reasonable suspicion for the stop, which then turned into probable cause for the arrest and, therefore, denied D.E.'s motion to suppress. D.E. pled no contest to both counts, but the firearm specifications were nolled. The court adjudicated him delinquent of both counts. D.E. had been on probation at the time the offenses were committed, and the court continued his probation. D.E. now appeals, and in his sole assignment of error challenges the trial court's decision denying his motion to suppress.

{¶9} Our review of a trial court's ruling on a motion to suppress "presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In considering this mixed question, we view the trial court as serving as the trier of fact and primary judge of witness credibility and the weight of the evidence presented. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Consequently, we must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71,

2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. However, we afford no such deference when considering the trial court's application of the law to the facts. Rather, we apply a de novo review on this point. *Burnside* at ¶ 8.

{¶10} The Fourth Amendment to the United States Constitution insulates individuals from unreasonable searches and seizures. *United States v. Hensley*, 469 U.S. 221, 226, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). A traffic stop initiated by a law enforcement officer implicates the Fourth Amendment and must comply with the Fourth Amendment's general reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

{¶11} If an officer's decision to stop a motorist for a traffic violation is prompted by a reasonable and articulable suspicion given all the circumstances, the stop is constitutionally valid. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 8. A citizen riding a bicycle may lawfully be stopped for a traffic violation. *State v. Roberts*, 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶ 14.

{¶12} D.E. contends that the police were not justified in their initial encounter with him. Specifically, D.E. contends that the police did not have reasonable suspicion to approach him for an investigative detention. In support of his contention, he refers to the two ordinances under which he was cited.

{¶13} In regard to riding his bicycle on the sidewalk, Cleveland Codified Ordinances 473.09(a) provides that "[n]o person shall ride a bicycle, skateboard or roller skates upon a sidewalk within a *business district*." (Emphasis added.) D.E. contends

that he was not riding his bicycle in a business district; rather, it was a residential area, as evidenced by Detective Ginley's testimony that D.E. was arrested in front of a house, in a residential neighborhood.

{¶14} In regard to failing to have a signaling device on his bicycle in violation of Cleveland Codified Ordinances 473.05,[2] Detective Ginley testified that he and Detective Middaugh noticed that violation *after* they had stopped D.E., not before. In light of the two ordinances, D.E. contends that the police made a mistake in law when they stopped him, and cites *State v. Fears*, 8th Dist. Cuyahoga No. 94997, 2011-Ohio-930, in support of his contention.

{¶15} In *Fears*, the defendant was stopped by the police for what they believed was a singular violation of Cleveland Codified Ordinances. The police learned after the fact, however, that they were wrong about the defendant's conduct being a violation of the city's ordinances. Nonetheless, the state contended that because the police did not learn of its mistake until later, they were "acting with a good faith belief that they had witnessed a traffic infraction." *Id.* at ¶ 9. The defendant contended that the good-faith exception does not apply to mistakes of law.

{¶16} This court, citing *United States v. McDonald*, 453 F.3d 958 (7th Cir.2006), held that the police's "mistake of law regarding [the defendant's] use of a turn signal

_____

[2]The ordinance provides, "[n]o person shall operate a bicycle unless it is equipped with a bell or other signal audible for a distance of at least one hundred (100) feet, except that a bicycle shall not be equipped with nor shall any person use upon a bicycle any siren or whistle."

without turning meant that the officers lacked a reasonable, articulate suspicion for the stop." *Fears* at ¶ 13.

{¶17} We agree with D.E. that the stop based on riding a bicycle on the sidewalk was not a violation of Cleveland Codified Ordinances because the record demonstrates that he was in a residential, not a business, area. Further, in regard to the lack of a signaling device, the detectives admitted that they did not know that D.E. did not have a signaling device on his bicycle until *after* they stopped him.

{¶18} But, nonetheless, the detectives specifically testified that when the decision was made to turn around and head back to the group, it was because they believed that "numerous" city ordinances were being violated. Detective Ginley testified, for example, that D.E. was not riding the bicycle with due care and did not have any lights or reflectors on it. *See* Cleveland Codified Ordinances 473.06, 473.07 and 473.08. That D.E. was not cited for any of the above-mentioned alleged violations was not fatal to the police's position of reasonable suspicion to conduct the stop. Thus, this case is distinguishable from *Fears*, where the defendant was stopped for only one alleged traffic violation, which it turned out he did not violate.

{¶19} In light of the above, the police had reasonable suspicion to stop D.E., and the trial court did not err in denying his motion to suppress. The sole assignment of error is, therefore, overruled.

{¶20} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., and
MELODY J. STEWART, J., CONCUR