[Cite as *State v. Hicks*, 2016-Ohio-5439.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MIAMI COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   2015-CA-24 |
| | : | |
| v. | : | T.C. NO. 14CR514 |
| | : | |
| JUAN M. HICKS | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___19th___ day of _____August_____, 2016.

. . . . . . . . . . .

JANNA L. PARKER, Atty. Reg. No. 0075261, Assistant Prosecuting Attorney, 201 W. Main Street, Troy, Ohio 45373
     Attorney for Plaintiff-Appellee

CHRISTOPHER R. BUCIO, Atty. Reg. No. 0076517, 247 West Court Street, Sidney, Ohio 45365
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} After the trial court overruled his motion to suppress evidence, Juan M. Hicks pled no contest in the Miami County Court of Common Pleas to two counts of aggravated possession of drugs.  Hicks was sentenced to an aggregate term of three years in prison, and he was ordered to pay court costs and restitution.  His driver's

license was suspended for one year.

{¶ 2}  On appeal, Hicks challenges the trial court's decision overruling his motion to suppress evidence.   For the following reasons, the judgment of the trial court will be affirmed.

### I.    Procedural History

{¶ 3}  On Thursday, November 13, 2014, Hicks was stopped on Interstate 75 in Miami County for traffic violations.   During the traffic stop, the highway patrolman detected an odor of raw marijuana coming from Hicks's vehicle.   Hicks admitted to having a small bag of marijuana in the center console; a "blunt cigar with marijuana in it" and an ecstasy pill were also in view on the console and the dashboard, respectively. Hicks was arrested.   "Marijuana butter" was found on his person, and a search of the vehicle following his arrest revealed various pills containing oxycodone.

{¶ 4}  On March 3, 2015, Hicks was indicted on four counts of aggravated possession of drugs, in violation of R.C. 2925.11.[1]   Hicks filed a motion to suppress the evidence obtained during and as a result of the traffic stop, on the bases that the patrolman had no reasonable, articulable suspicion of a traffic offense, the stop was pretextual, and the scope of the stop was improperly "extend[ed]."   The trial court conducted a hearing on the motion and, on July 28, it overruled the motion to suppress. Hicks subsequently pled no contest to Counts I and II, in exchange for which Counts III

---

[1] The specific offenses were as follows: Count I - aggravated possession of Oxycodone, ≥5x bulk amount but <50x bulk amount, a felony of the second degree; Count II - aggravated possession of Oxycodone, ≥ bulk amount but <5x bulk amount, a felony of the second degree; Count III - aggravated possession of Oxycodone, ≥ bulk amount but <5x bulk amount, a felony of the third degree; and Count IV - "MDMA," a felony of the fifth degree.

and IV were dismissed. The parties jointly recommended a three-year prison sentence. The trial court sentenced Hicks to three years on Count I and 30 months on Count II, to be served concurrently. It also ordered him to pay court costs and to pay restitution to the Ohio State Highway Patrol in the amount of $210 for drug testing, to which Hicks did not object. Hicks's driver's license was suspended for one year.

## II. The Basis for the Traffic Stop

{¶ 5} Hicks raises one assignment of error on appeal, in which he argues that the trial court erred in failing to suppress the observations of and the evidence obtained during the "unconstitutional stop" of his vehicle. He asserts that the patrolman lacked probable cause and/or a reasonable articulable basis for the stop and that, therefore, all evidence subsequently obtained was "fruit of the poisonous tree."

*Constitutionality of Traffic Stops*

{¶ 6} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry,* police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a minor traffic violation. *Id.; State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8; *State v. Martin,* 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry.*

{¶ 7} " 'Reasonable, articulable suspicion' is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' " *State v. Fears,* 8th Dist. Cuyahoga No. 94997, 2011-Ohio-930, ¶ 5, citing

*Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *State v. Scott,* 2d Dist. Clark No. 2013 CA 104, 2014-Ohio-4963, ¶ 12. The existence of reasonable suspicion is determined by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard,* 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews,* 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

**{¶ 8}** At a hearing on a motion to suppress evidence, the trial court, as trier of fact, is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Drumm,* 2015-Ohio-2176, 36 N.E.3d 769, ¶ 9 (2d Dist.), citing *State v. Hopfer,* 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996). An appellate court must accept any findings of fact by the trial court which are supported by competent, credible evidence, but it does not defer to the trial court on questions of law. *Id.,* citing *State v. Curry,* 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994).

**{¶ 9}** A law enforcement officer may lawfully stop a vehicle if the officer has a reasonable articulable suspicion that the operator has engaged in criminal activity, including a minor traffic violation. *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8; *State v. Hardy*, 2d Dist. Montgomery No. 24114, 2011-Ohio-241, ¶ 20. A traffic violation gives an officer a reasonable articulable suspicion justifying a traffic stop, notwithstanding that the traffic stop may also have been a pretext to investigate suspected drug activity. *Mays* at ¶ 22; *State v. Wilcox,* 177 Ohio App.3d 609, 2008-Ohio-3856, 895 N.E.2d 597, ¶ 13 (2d Dist.); *State v. Cole*, 2d Dist. Montgomery No. 26576, 2015-Ohio-5295, ¶ 17.

{¶ 10} The duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the stop and issue a traffic citation, absent specific and articulable facts that demonstrate a reasonable suspicion of criminal activity, other than the traffic violation, that justifies continued detention. *Cole* at ¶ 20; *State v. Ramos,* 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523 (2d Dist.); *State v. Dewitt,* 2d Dist. Montgomery No. 23735, 2010-Ohio-6476, ¶ 41. After the reasonable period of time for issuing the traffic citation has passed, an officer must have a reasonable articulable suspicion of illegal activity to continue the detention. *Ramos* at ¶ 13.

*Evidence at the Suppression Hearing*

{¶ 11} Ohio State Highway Patrol Trooper, Chris Coverstone, was the only witness to testify at the suppression hearing. Coverstone testified that he had been in the highway patrol for over 21 years, had been involved in hundreds of drug cases, and was generally aware of "possible indicators of criminal activity."

{¶ 12} Trooper Coverstone testified that, on Thursday, November 13, 2014, at approximately 9:16 a.m., he was sitting in his cruiser in the median of Interstate 75 when he observed a black Ford Expedition traveling southbound. According to Coverstone, the vehicle attracted his attention because the driver (Hicks) "was locked up, staring straight ahead with a lack of common movement" and because "the rear windows were vented," although the outside temperature was only 25˚. Using a laser, Coverstone measured the Expedition's speed at 71 mph in a 70 mph zone as he passed the stationary cruiser.

{¶ 13} Trooper Coverstone pulled out of the median to attempt to catch up to the vehicle, observe its driving, and run its registration. A little further south, the speed limit

dropped to 65 mph, and Coverstone "paced" the Expedition at 69-70 mph in this zone. Coverstone also saw the Expedition merge from the left lane to the middle lane between two other cars; Coverstone testified that, in doing so, the Expedition unsafely "encroached" between the two other vehicles, which resulted in following the front car too closely. Coverstone then initiated a traffic stop.

{¶ 14} At the traffic stop, for safety reasons and because of the tint on the vehicle's windows, Trooper Coverstone summoned Hicks out of the Expedition and to the rear of the vehicle. Coverstone asked Hicks for his driver's license and registration, at which point Hicks stated that his wife (who was not present) had rented the car. Coverstone observed that Hicks's eyes were watering, which Coverstone stated can be a sign of nervousness, and that Hicks kept looking back at the vehicle.

{¶ 15} Hicks went back to the driver's door of the Expedition when Coverstone asked for the rental car agreement, at which point Coverstone went to the passenger-side window. Without being asked to do so, Hicks rolled down the passenger window while he looked for the rental agreement. Coverstone "immediately smell[ed] a strong odor of raw marijuana coming from the vehicle." Coverstone also observed that there was an air freshener in the car, which he found to be unusual for a rental car, because it is regularly cleaned by the rental company and is usually driven for a short time. Coverstone had experience with air fresheners being used to mask the smell of drugs, and he suspected, under the circumstances presented, that the air freshener in the rental car and the vented windows were intended to dissipate the smell of drugs. Coverstone also observed that Hicks's nervousness did not decrease during their encounter, as would usually happen during a traffic stop.

{¶ 16} Trooper Coverstone patted down Hicks, placed Hicks in the back of the cruiser, and read him his rights before questioning him about the smell of marijuana. When Hicks was patted down, Coverstone found a small container of marijuana butter – "a highly concentrated form of THC which is made * * * by using butane to burn marijuana down in to a resin" – in Hicks's pocket. When asked about the smell of raw marijuana coming from his car, Hicks acknowledged that there was a small bag of marijuana in the center console of the car. Coverstone conducted a search of the interior of the car. In addition to the small bag of marijuana, Coverstone found an ecstasy pill on the dashboard and a "blunt cigar with marijuana material in it" in a cup in the console. Hicks stated that the ecstasy pill had been given to him to help him stay awake.

{¶ 17} Because of the cold temperature and the fact that Coverstone already possessed evidence of a felony, the Expedition was towed to the patrol post for a more thorough search. More than 300 additional oxycodone pills were later found in the "left rear quarter panel area behind some foam insulation."

{¶ 18} Trooper Coverstone testified that he first observed the Expedition around 9:16 a.m. His search of the car began at 9:22 and ended at 9:28. Coverstone called for the tow truck at 9:33 a.m. Video from the cruiser, which contained a recording of the events beginning 90 seconds before Coverstone turned on his overhead lights and was admitted as an exhibit, corroborated some of this information; however, according to the trial court's decision, the video was, "at best, unclear" as to the violation of "the distance requirement."

{¶ 19} The trial court found that Trooper Coverstone had observed two traffic infractions prior to initiating the traffic stop: speeding at 69-70 mph in a 65 mph zone and

"travelling too closely behind the vehicle in front of him." It further found that these traffic offenses justified the stop of Hicks's vehicle. Based on the evidence presented, these conclusions were supported by the record. The fact that Coverstone may have also had an inchoate suspicion of drug activity did not invalidate the lawful traffic stop. *Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 22.

{¶ 20} The trial court also concluded that Trooper Coverstone had not "exceeded the permissible scope of the traffic stop," since his detection of the odor of raw marijuana, which provided probable cause to search the interior of the vehicle, occurred "less than two minutes from the time that Hicks brought his vehicle to a stop." The record supports the trial court's conclusion that probable cause for at least one drug offense developed quickly, and that the stop was not unconstitutional due to its length or scope.

{¶ 21} The assignment of error is overruled.

### III. Conclusion

{¶ 22} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Janna L. Parker
Christopher R. Bucio
Hon. Christopher Gee