[Cite as *State v. Kelly*, 2019-Ohio-5226.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | hHon. W. Scott Gwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 19 CAC 03 0021 |
| BRIAN KELLY | : | |
| | : | |
| Defendant-Appellant | : | OPINION |


CHARACTER OF PROCEEDING:     Criminal appeal from the Delaware
Municipal Court, Case No. 18TRC15143

JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     December 17, 2019

APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

AMELIA BEAN-DEFLUMER          APRIL CAMPBELL
Assistant Prosecutor                 545 Metro Place South, Ste. 100
70 North Union Street               Dublin, OH 43017
Delaware, OH 43015

*Gwin, P.J.*

{¶1} Defendant-appellant Brian Kelly ["Kelly"] appeals his conviction and sentence after a negotiated no contest plea in the Delaware County Municipal Court.

*Facts and Procedural History*

{¶2} Officer Dennison has been a police officer with the City of Powell for approximately 11 years. Prior to working for the Powell Police Department Officer Dennison was a deputy with the Knox County Sheriff's Office for 5 years. When he first became a law enforcement officer, Officer Dennison was trained in the apprehension and detection of impaired drivers. Officer Dennison has updated his training as required. Officer Dennison currently trains officers within the Powell Police Department.

{¶3} On October 4, 2018, Officer Dennison was on routine patrol in Powell training a new officer, Officer Graves. While on patrol, the officers received a dispatch about a reckless driver on State Route 750 and U.S. 23 heading into the city of Powell on State Route 750. The dispatcher gave a description of the vehicle—a black Audi—with a license plate number. The officers observed a black Audi on State Route 750 travelling in the same direction given by dispatch. The officers could not confirm the license plate number as the black Audi was coming towards them did not have a front license plate. The officers made a U-turn and followed the black Audi. The Audi accelerated and the officers were unable to read the Audi's rear license plate; the officers continued to follow the Audi. Officer Dennison observed the Audi travel left of center and change lanes without signaling. (T. at 12; 35). At the intersection of State Route 750 and Sawmill Parkway, the Audi came to a stop. The officers were able to catch-up to the Audi, read the rear license plate, and confirm that it was the same vehicle that was the subject of the

dispatch.  Officer Dennison noted that the Audi turned again without signaling.  Ultimately, after observing several traffic violations, Officers Dennison and Graves activated their lights and sirens to conduct a traffic stop.  The Audi continued to move.  Eventually, the Audi stopped at Verona Drive, in the City of Powell.  (T. at 20).

{¶4}    Officer Graves approached the driver's side of the Audi and spoke to the driver, Kelly, who was alone inside the vehicle.   Officer Dennison approached the passenger side of the Audi.  Officer Dennison, in listening to Kelly speak to Officer Graves noticed that Kelly's speech was slurred, thick, and mumbled.   Officer Dennison could smell the odor of an alcoholic beverage coming from inside the vehicle.  Officer Dennison also noticed that Kelly fumbled with his license and appeared "shaky" and slow.

{¶5}    Officers Graves and Dennison returned to their cruiser to confer and to run Kelly's information through their in-cruiser computer.  During this in-cruiser conversation, Officer Graves[1] indicated he did not smell an odor of an alcoholic beverage coming from the Audi or Kelly, but observed slurred speech and that Kelly struggled with his paperwork.

{¶6}    Officer Dennison then approached the driver's side of the Audi.  Officer Dennison maintained that he smelled a "very strong" odor emanating from the Audi while he was at the driver's side door of the Audi.  Officer Dennison noted that Kelly still seemed confused and "shaky"—Kelly would stare straight ahead instead of making eye contact with the officers.  Further, Officer Dennison noted that Kelly's eyes were bloodshot and glassy and that his pupils were constricted.  Officer Dennison asked Kelly out of his

---

[1] Officer Graves did not testify during the hearing on Kelly's Motion to Suppress.

vehicle to administer field sobriety tests. Once outside the Audi, Kelly admitted drinking one beer.

{¶7} Kelly was arrested on October 4, 2018 for first-degree misdemeanor OVI pursuant to R. C. 4511.19; Willful or wanton disregard of safety on highways [Reckless operation] in violation of R.C. 4511.20; Rules for driving in marked lanes [Marked Lanes], in violation of R.C. 4511.33 and Use of signals for stopping, turning, decreasing speed, moving left or right; limitations [Turn Signals], in violation of R.C. 4511.39.

{¶8} Kelly filed a motion to suppress evidence that was heard by the Delaware Municipal Court on December 21, 2018. At the hearing, Officer Dennison of the City of Powell Police Department testified. Following the hearing, the Delaware Municipal Court filed a judgment entry denying Kelly's Motion to Suppress. [Docket entry No. 15].

{¶9} On February 13, 2019, the trial court granted the state's motion and dismissed the reckless operation, marked lanes and turn signal violations. Thereafter, Kelly pled no contest and was found guilty of the OVI offense in violation of R.C. 4511.19(A)(1)(a).

*Assignments of Error*

{¶10} "I. KELLY'S MOTION TO SUPPRESS HIS STOP HAD MERIT: ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION PROHIBITED THE OFFICERS FROM PULLING KELLY OVER FOR MINOR MISDEMEANOR TRAFFIC INFRACTIONS OCCURRING OUTSIDE THEIR JURISDICTION. THUS, THE ATTORNEY'S DECISION TO WITHDRAW THAT CLAIM WAS OBJECTIVELY UNREASONABLE, PREJUDICING KELLY.

{¶11} "II. THE TRIAL COURT ERRED IN NOT DETERMINING WHETHER KELLY'S STOP WAS UNREASONABLY PROLONGED, BECAUSE EVEN IF THE WRITTEN MOTION DID NOT COVER THAT GROUND, KELLY'S CROSS-EXAMINATION OF OFFICER DENNISON SUFFICIENTLY RAISED THE ISSUE.

{¶12} "III. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE EVIDENCE AGAINST KELLY: TRAFFIC INFRACTIONS COMBINED WITH NO ODOR OF ALCOHOL IS AN INSUFFICIENT BASIS TO EXPAND A STOP TO CONDUCT STANDARDIZED FIELD SOBRIETY TESTS; OFFICER DENNISON'S TESTIMONY AS TO AN ODOR OF ALCOHOL WAS NOT COMPETENT NOR CREDIBLE; AND OFFICER DENNISON'S SECOND APPROACH TO COLLECT MORE EVIDENCE UNREASONABLY PROLONGED KELLY'S STOP."

I.

{¶13} In his first Assignment of Error, Kelly argues that his trial attorney was ineffective because he withdrew Kelly's challenge to the traffic stop. **STANDARD OF APPELLATE REVIEW.**

{¶14} To obtain a reversal of a conviction based on ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687–688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693(1984). A defendant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other. *Strickland* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52 (2000).

{¶15} In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

{¶16} The United States Supreme Court discussed the prejudice prong of the *Strickland* test,

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.
>
> "Surmounting *Strickland'*s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690, 104

S.Ct. 2052. Even under de novo review, the standard for judging counsel's

representation is a most deferential one. Unlike a later reviewing court, the

attorney observed the relevant proceedings, knew of materials outside the

record, and interacted with the client, with opposing counsel, and with the

judge. It is "all too tempting" to "second-guess counsel's assistance after

conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; *see also Bell*

*v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002);

*Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180

(1993). The question is whether an attorney's representation amounted to

incompetence under "prevailing professional norms," not whether it

deviated from best practices or most common custom. *Strickland*, 466 U.S.,

at 690, 104 S.Ct. 2052.

*Harrington v. Richter,* 562 U.S. 86, 104-105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

**Failure to File a Motion to Suppress.**

{¶17} We find that Kelly's argument that his counsel withdrew the challenge to the

traffic stop is analogous to a situation where counsel fails to file a motion to suppress.

{¶18} Trial counsel's failure to file a suppression motion does not per se constitute

ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000–Ohio–

0448; *Accord, State v. Ortiz,* 5th Dist. Stark No. 2015CA00098, 2016-Ohio-354, ¶56.

Counsel can only be found ineffective for failing to file a motion to suppress if, based on

the record, the motion would have been granted. *State v. Lavelle*, 5th Dist. No. 07 CA

130, 2008–Ohio–3119, at ¶ 47; *State v. Cheatam*, 5th Dist. No. 06–CA–88, 2007–Ohio–

3009, at ¶ 86. The defendant must further show that there is a reasonable probability that

the outcome would have been different if the motion had been granted or the defense pursued. *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986); *see, also, State v. Santana*, 90 Ohio St.3d 513, 739 N.E.2d 798 (2001), *citing State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

**ISSUE FOR APPEAL**

**A. Whether there is a reasonable probability a motion to suppress the traffic stop would have been granted.**

*1. Whether the Officer had jurisdiction to initiate a traffic stop of Kelly's vehicle.*

**{¶19}** The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *."  The Fourth Amendment is enforced against the States by virtue of the due process clause of the Fourteenth Amendment of the United States Constitution. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).  The stop of a vehicle and the detention of its occupants by law enforcement, for whatever purpose and however brief the detention may be, constitutes a seizure for Fourth Amendment purposes. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), *citing United States v. Martinez-Fuerte*, 428 U.S. 543, 556-558, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

**{¶20}** In *State v. Mays*, 119 Ohio St.3d 406, 894 N.E.2d 1204, 2008-Ohio-4538, the defendant argued that his actions in the case – twice driving across the white edge line – were not enough to constitute a violation of the driving within marked lanes statute, R.C. 4511.33.  Id. at ¶ 15.  The appellant further argued that the stop was unjustified because there was no reason to suspect that he had failed to first ascertain that leaving

the lane could be done safely or that he had not stayed within his lane "as nearly as [was] practicable," within the meaning of R.C. 4511.33(A)(1). In rejecting these arguments, the Supreme Court noted, "the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." Id. at ¶ 17. The Supreme Court concluded that a law-enforcement officer who witnesses a motorist drift over lane markings in violation of a statute that requires a driver to drive a vehicle entirely within a single lane of traffic has reasonable and articulable suspicion sufficient to warrant a traffic stop, even without further evidence of erratic or unsafe driving. Id. at syllabus. In *Mays,* the Ohio Supreme Court made the following observation as it pertains to Ohio law,

> Appellant's reliance on [*Dayton v.*] *Erickson* [76 Ohio St.3d 3, 665 N.E.2d 1091 (1996)], and on *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, is misplaced. Probable cause is certainly a complete justification for a traffic stop, *but we have not held that probable cause is required.* Probable cause is a stricter standard than reasonable and articulable suspicion. *State v. Evans* (1993), 67 Ohio St.3d 405, 411, 618 N.E.2d 162. The former subsumes the latter. Just as a fact proven beyond a reasonable doubt has by necessity been proven by a preponderance, an officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop. *Erickson* and *Whren* do not hold otherwise.

119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23 (emphasis added). The Ohio Supreme Court concluded,

> Therefore, if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by *a reasonable and articulable suspicion* considering all the circumstances, then the stop is constitutionally valid.

119 Ohio St.3d 406, ¶8 (emphasis added).

{¶21} Officer Dennison testified that that he witnessed "one marked lanes violation, as well as excessive speed as he pulled away - -or the suspect vehicle pulled away from us, which was within our jurisdiction." T. at 35. Accordingly, the officers had *a reasonable and articulable suspicion* considering all the circumstances to initiate a traffic stop of Kelly's vehicle. Kelly's vehicle continued to travel outside the officer's jurisdiction during which they observed numerous other traffic violations. However, when Kelly's car was stopped, it was within the City of Powell's jurisdiction limits. T. at 20.

{¶22} To summarize, the officers witnessed two traffic violations that occurred within their jurisdiction. Although the officers activated their siren and lights outside their jurisdiction, Kelly's car nonetheless continued to travel and did not stop until it was once again within the jurisdiction of the officers. Kelly was asked to, and did in fact perform the FST's within the jurisdiction of the City of Powell. Kelly was arrested for OVI within the jurisdiction of the City of Powell.

{¶23} As there is not a reasonable probability that a motion to suppress the traffic stop would have been granted, trial counsel was not ineffective in withdrawing Kelly's challenge to the traffic stop.

{¶24} Kelly's First Assignment of Error is overruled.

## II. & III.

{¶25} In his Second Assignment of Error, Kelly contends that the trial court erred in not finding that the traffic stop was impermissibly prolonged. In his Third Assignment of Error, Kelly argues that the trial court erred in failing to suppress the evidence against him because the evidence was insufficient to justify the request for Kelly to perform the Standardized Field Sobriety Tests. ["FST"].

**STANDARD OF APPELLATE REVIEW.**

{¶26} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial

court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**ISSUE FOR APPEAL.**

**A. Whether the lawful detention for a traffic infraction became an unlawful detention when the officer decided to request Kelly perform the FST.**

{¶27} The Ohio Supreme Court has held,

> "[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. *State v. Keathley* (1988), 55 Ohio App.3d 130, 131 [562 N.E.2d 932]. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *State v. Bolden*, Preble App. No. CA2003–03–007, 2004–Ohio–184 [2004 WL 77617], ¶ 17, citing *Delaware v. Prouse* (1979), 440 U.S. 648, 659, 99 S.Ct. 1391 [59 L.Ed.2d 660]. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *State v. Carlson* (1995), 102 Ohio App.3d 585, 598–599 [657 N.E.2d 591], citing *State v. Cook* (1992), 65 Ohio St.3d 516, 521–522 [605 N.E.2d 70], and *U.S. v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568 [84 L.Ed.2d 605].

*State v. Batchili*, 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E.2d 1282, ¶ 12. In order to justify a continued detention beyond the normal period required to issue a citation the officer

must have a "reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *Batchili*, ¶ 15. "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci,* 11th Dist. No.2001–L–205, 2003–Ohio–702, ¶ 30, *citing State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489(1988).

{¶28} A request made of a validly detained motorist to perform field sobriety tests is generally outside the scope of the original stop, and must be separately justified by other specific and articulable facts showing a reasonable basis for the request. *State v. Albaugh*, 5th Dist. Tuscarawas No. 2014 AP 11 0049, 2015-Ohio-3536, 2015 WL 5096900, ¶18, *quoting State v. Anez*, 108 Ohio Misc.2d 18, 26–27, 738 N.E.2d 491 (2000). Although requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment, courts have generally held that the intrusion on the driver's liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion that the driver is under the influence of alcohol (or another drug) in order to conduct a field sobriety test. *See State v. Bright*, 5th Dist. Guernsey No. 2009–CA–28, 2010-Ohio-1111, ¶ 17, *citing State v. Knox*, 2nd Dist. Greene No. 2005–CA–74, 2006-Ohio-3039. Under a "totality of the circumstances" approach, we look at the entirety of the events leading to the officer's decision to conduct field sobriety tests. *See, e.g., State v. Locker*, 5th Dist. Stark App. No. 2015CA00050, 2015-Ohio-4953, ¶ 36, *citing State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980).

{¶29} "Reasonable suspicion is "* * * something more than an inchoate or un-particularized suspicion or hunch, but less than the level of suspicion required for probable cause." *State v. Shepherd*, 122 Ohio App.3d 358, 364, 701 N.E.2d 778 (2nd

Dist.1997). "A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Farey*, 5th Dist. Stark No. 2017CA00137, 2018-Ohio-1466, ¶ 23, *citing Village of Kirtland Hills v. Strogin*, 6th Dist. Lake App. No.2005–L–073, 2006-Ohio-1450, ¶ 13 (internal citation omitted).

{¶30}   In analyzing similar cases, we have accepted the template set forth by the Supreme Court of Ohio in *State v. Batchili*, 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E.2d 1282, paragraph two of the syllabus: "The 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop." The intrusion on the drivers' liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion the driver is under the influence of alcohol in order to conduct a field sobriety test. *State v. Knox*, 2nd Dist. Greene App. No. 2005–CA–74, 2006–Ohio–3039. *See also, State v. Bright*, 5th Dist. Guernsey App. No. 2009–CA–28, 2010–Ohio–1111.

{¶31}  The officers in the case at bar received a report of reckless driving. The officers observed the vehicle speed away as the officers attempted to approach. The officers witnessed moving violations during their pursuit both within and outside their jurisdiction. Officer Dennison testified to a "very strong odor of alcohol." Kelly was the only person inside the car at the time of the stop. Officer Dennison described Kelly's speech as "thick, slurred, mumbled speech…" (T. at 22). Officer Dennison noticed Keely was "very fumbly and shaky, and his movements were very slow inside that vehicle." (T. at 22). Further Officer Dennison observed that Kelly was "disoriented and easily

confused." (T. at 23). Further Officer Dennison noticed that Kelly's "eyes were heavily bloodshot, watery and glassy, and [Officer Dennison] noticed that his pupils were constricted." (T. at 23). Officer Graves' comments on the cruiser camera video to the contrary go to the weight of the evidence, not the admissibility of Officer Dennison's observations. In *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972(1992), the Ohio Supreme Court noted that the evaluation of evidence and the credibility of the witnesses are issues for the trier of fact in the hearing on the motion to suppress. Id. at 366, 582 N.E.2d at 981-982. The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence.

{¶32} Kelly's citations to cases from the Second Appellate District are unpersuasive. In *State v. Montelauro,* the Court noted,

> Although *Santiago*[2] acknowledged the decisions in *Spillers*[3] and *Dixon*[4], it, like *Hido*[5], noted the Second District has held that "a strong odor of an alcoholic beverage, without other significant indicia of intoxication, may be sufficient to provide an officer with reasonable suspicion of driving under the influence." Id. at ¶ 12, 565 N.E.2d 1271[6]. *See also Columbus v. Shepherd,* 10th Dist. No. 10AP–483, 2011–Ohio–3302, ¶ 38, *appeal not allowed,* 2011–Ohio–5883, 130 Ohio St.3d 1439, 957 N.E.2d 300, citing *State v. Strope*, 5th Dist. No. 08 CA 50, 2009–Ohio–3849, ¶ 19, *quoting*

---

[2] *State v. Santiago,* 195 Ohio App.3d 649, 2011-Ohio-5292, 961 N.E.2d 264(2nd Dist.).
[3] *State v. Spillers,* 2nd Dist. Darke No. 1504, 2000 WL 299550(Mar. 24, 2000).
[4] *State v. Dixon,* 2nd Dist. Greene No. 2000-CA-30, 2000 WL 1760664 (Dec. 1, 2000).
[5] *State v. Hido,* 2nd Dist. Clark No. 10CA0046, 2011-Ohio-2560,
[6] *State v. Andrews,* 57 Ohio St.3d 86, 565 N.E.2d 1271(1991).

> *Wells*[7] (stating that "where a non-investigatory stop is initiated and the odor
> of alcohol is combined with glassy or bloodshot eyes and further indicia of
> intoxication, such as an admission of having consumed alcohol, reasonable
> suspicion exists"); *Perkins*[8] at ¶ 10 (noting the Second District's holding in
> *Dixon* and *Spillers* "hinged on the fact that the arresting officers noticed only
> a 'slight' odor of alcohol").

10th Dist. Franklin No. 11AP-413, 2011-Ohio-6568, ¶18.

{¶33} In Ohio, it is well settled that, where a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists. *State v. Wells*, 2nd Dist. Montgomery No. 20798, 2005-Ohio-5008; *State v. Cooper*, 2nd Dist. Clark No.2001-CA-86, 2002-Ohio-2778; *State v. Robinson*, 2nd Dist. Greene No.2001-CA-118, 2002-Ohio-2933; *State v. Mapes*, 6th Dist. Fulton No. F-04-031, 2005-Ohio-3359 (odor of alcohol, 'slurred speech' and glassy and bloodshot eyes); *Village of Kirtland Hills v. Strogin,* 11th Dist. Lake No. 2005-L-073, 2006-Ohio-1450 *; State v. Beeley*, 6th Dist. Lucas No. L-05-1386, 2006-Ohio-4799, ¶16, *New London v. Gregg*, 6th Dist. Huron No. H-06-030, 2007-Ohio-4611; *State v. Bright,* 5th Dist. Guernsey No. 2009-CA-28, 2010-Ohio-111, ¶22.

{¶34} Based upon the totality of the circumstances, we find Officer Dennison relied upon specific, articulable facts giving rise to a reasonable suspicion Kelly was driving under the influence, so that an extension of the initial detention for the performance of field sobriety testing was justified, and the ruling of the trial court was correct.

---

[7] *State v. Wells,* 2nd Dist. Montgomery No. 20798, 2005-Ohio-5008.
[8] *State v. Perkins,* 10th Dist. Franklin No. 07AP-924, 2008-Ohio-5060.

{¶35}   Accordingly, because we have found that the traffic stop was lawful and that the officers relied upon specific, articulable facts giving rise to a reasonable suspicion Kelly was driving under the influence so that an extension of the initial detention for the performance of field sobriety testing was justified, any error in the trial court not ruling on this issue is harmless beyond a reasonable doubt.

{¶36}   Kelly's Second and Third Assignments of Error are overruled.

{¶37}   The judgment of the Delaware Municipal Court is affirmed.


By Gwin, P.J.,

Hoffman, J., and

Delaney, J, concur